GILBERT HAMMOND & another vs. ARTHUR L. PUTNAM & others.

A testator directed his executors to sell and convey a farm to his son at an appraised value, and if the son did not choose to take it, he gave them authority to sell it to any one at their discretion; he ordered them to sell and convey any other real estate he might own at his death; and he gave the residue of his estate, after payment of debts and legacies, to his s.x children, to be equally divided between them. The executors so.d the farm to the son, and the debts and legacies having been paid, the proceeds of this sale remained to be divided as residue. All of the six children were alive at the death of the testator but one of them died afterwards, but before the sale of the farm. *Held*, that the share of the deceased child in the proceeds of the sale went to her administrator, and not to her heirs.

BILL IN EQUITY, filed August 17, 1872, by Gilbert Hammond and Levi L. Hammond, executors of the will of Levi Hammond, praying for instructions. The case, as it appeared from the bill and answers, on which it was reserved by *Colt*, J., for the determination of the full court, was as follows :

Levi Hammond died July 17, 1871, leaving a will which was duly proved September 5, 1871, and which, omitting the formal parts, was as follows :

" First. I give and bequeath to my beloved wife, Rachel Hammond, all my household furniture, my top carriage and harness, and I also give to my said wife the use of the place on which I now live, at Charlton Depot, during her natural life. I also give to my said wife the interest of ten thousand dollars, to be paid to her by my executors hereinafter named yearly during her life, said provisions to be instead of dower.

" Second. I give and bequeath to my nephew, Lewis H. Merritt of Hartland, in the State of Vermont, one hundred dollars.

" Third. I authorize and direct my executors to sell to my son George Hammond my old farm at the Northside, so called, containing one hundred and sixty acres, more or less, at the appraisal of Erastus Winslow, Daniel H. Tucker and William Adams, provided my said son chooses to take said farm at said appraisal ; and I hereby authorize and empower my said executors to make, execute and deliver good and sufficient deeds for the conveyance of said farm ; and if my said son does not choose to take said farm at appraisal, I give my said executors authority to sell and convey said farm to any person or persons, selling at public or private sale, in their discretion ; and I direct my executors to cause the barn on the aforesaid farm to be shingled out of the proceeds of my estate, provided the same is not done before my decease, and also the shed attached to said barn, and the hoghouse on said farm.

" And any other real estate I may own at the time of my decease I order my said executors to sell and convey as aforesaid, excepting the place the use of which is herein secured to my said wife.

" Fourth. I authorize and direct my said executors to retain from my estate and hold in trust the sum of ten thousand dollars, the interest on said sum to be paid to my said wife yearly as hereinbefore provided, and the remainder of my estate, after the payment of my just debts and funeral charges, and for a suitable and proper monument at my grave, I give and bequeath to my children Gilbert Hammond, Levi L. Hammond, George Hammond, Aaron Hammond, Hannah D. Aldrich, wife of Dwight M. Aldrich, and Mary Jane Putnam, wife of Leonard Putnam, to be equally divided between them.

" And after the decease of my said wife I authorize and direct my said executors to sell at public or private sale the place on which I now live, the use of which is herein secured to my said wife, and I hereby give them authority to make, execute and deliver deeds for the conveyance thereof, and, after paying from the proceeds the funeral expenses of my said wife, and for a suitable and proper monument at her grave, and the expenses of administration, the remainder, together with the ten thousand dollars held in trust as aforesaid by my said executors, I give and bequeath to my aforesaid children, to be equally divided between them.

" And I ordain and appoint my sons Gilbert Hammond and Levi L. Hammond executors of this my last will and testament."

The children named in the will were the only heirs of the testator. Mary Jane Putnam died July 29, 1871, leaving her husband and two minor children, Levi H. Putnam and Arthur L. Putnam, her surviving. Levi H. Putnam died March 10, 1872, under age and unmarried. Leonard Putnam was appointed administrator of the estates of Mary Jane Putnam and Levi H. Putnam.

The plaintiffs, as executors, under the authority of the will, on April 1, 1872, sold the farm at Northside to George Hammond, at the appraisal of the persons named in the will, for $6700. All debts and legacies were paid, and this sum of $6700 remained in he hands of the plaintiffs to be distributed as residue under the will. Leonard Putnam contended that the share of Mary Jane

Putnam should be paid to him. Arthur L. Putnam, by his guardian *ad litem*, contended that it should be paid to him.

*P. E. Aldrich*, for Leonard Putnam.

*T. L. Nelson*, for Arthur L. Putnam.

MORTON, J. This is a bill in the nature of a bill of interpleader, brought to obtain the directions of the court as to the distribution of the residue in the hands of the plaintiffs as the executors of the will of Levi Hammond. The clause of the will disposing of this residue is as follows : "And the remainder of my estate, after the payment of my just debts and funeral charges, and for a suitable and proper monument at my grave, I give and bequeath to my children, Gilbert Hammond, Levi L. Hammond, George Hammond, Aaron Hammond, Hannah D. Aldrich, wife of Dwight M. Aldrich, and Mary Jane Putnam, wife of Leonard Putnam, to be equally divided between them." The five children first named are alive, and no question arises as to the shares which belong to them respectively. But Mary Jane Putnam died soon after the testator, and the only question in the case is as to the disposition of her share. It is claimed by her husband and by her only surviving child. If it passed to her under her father's will as a bequest of personal property, then her husband, who is also her administrator, is entitled to it subject to the payment of her debts. Gen. Sts. *c.* 94, § 16, *cl.* 4. On the other hand, if it is to be regarded and treated as real estate devised to her, it descended to her two children, and her surviving son Arthur is entitled to it, subject to her husband's right as tenant by the curtesy. Gen. Sts. *c.* 91, § 1, *cl.* 6, and § 11.

At the death of the testator, the property of which the fund in controversy is the proceeds was real estate. The question is whether, by the rules of law, it is to be regarded as constructively converted into personal property at the time of his death, so that the will operated upon it as personalty. The cases upon this subject in the English and American courts are very numerous. But the general rule is recognized in all of them, that where it unequivocally appears from the will that the intention of the testator was to convert real estate into personal estate, the law will

consider the conversion as actually made at the death of the testator, and treat the estate as personal for all purposes to which the intention of the testator clearly extends. 1 Jarm. Wills, (3d ed.) 549 *&* *seq.*

Embarrassing cases have often arisen in which the testator has directed the conversion of real into personal, or personal into real estate, for certain purposes, which purposes, in whole or in part, cannot be carried into effect. Such was the leading case of *Ackroyd* v. *Smithson*, 1 Bro. Ch. 437, in which the testator directed his real estate to be sold and the proceeds paid to certain legatees ; two of the legatees died before the testator. Lord Chancellor Thurlow held that the legacies to them lapsed, and that their shares, so far as they were constituted of real estate at the testator's death, descended to the heirs at law. It is to be observed that Mr. Scott, afterwards Lord Eldon, in his famous argument in this case, admitted that in favor of his legatees the testator intended to convert the whole property into personalty in case all his legatees should eventually take the whole, and that as to legatees the law would regard it as converted out and out, but he argued that no intention was shown as to that part of the proceeds as to which his disposition, in the event which happened, failed of effect. But the general principle is applied in all the cases, that wherever the intention of the testator is clear to convert real into personal estate, the law will regard it as converted to that extent at the death of the testator, and he who takes under the will takes it with the character which the will has impressed upon it. In the case at bar, therefore, we must inquire what was the intention of the testator. It is to be noticed that all the residuary legatees were living at the time of his death, so that it is not necessary to decide what rule would be adopted if one or more of them had died before him, and thus his disposition of his property had in part failed to take effect. But we think it is clear beyond a reasonable doubt that, for the purposes of distribution among his legatees, his intention was to convert his estate into personal property, and to impress upon it the character of personalty.

The direction to the executors to sell the real estate is absolute and imperative. In the third clause he says: " I authorize and direct my executors to sell to my son George Hammond my old farm at the Northside, so called;" and also in the same clause, " and any other real estate I may own at the time of my decease I order my said executors to sell and convey as aforesaid, excepting the place the use of which is herein secured to my said wife." The gift to the residuary legatees is not a devise of land, but a bequest of money, " to be equally divided between them." It is only after the sale that it is to be divided, or that it could be received by the legatees. The whole tenor of the will shows that it was the understanding and intention of the testator that his personal property, and the proceeds of the real estate directed to be sold, should form a common fund, out of which his debts and specific legacies were to be paid, and the trust fund for the support of his widow taken, and the balance to be equally divided among his children. He gave the quality of personalty to the proceeds of the real estate, and the law will deal with it as having at the time of his death the character which he impressed upon it, of personal property. *Martin* v. *Sherman*, 2 Sandf. Ch. 341. *Craig* v. *Leslie*, 3 Wheat. 563. The provisions of the Gen. Sts. *c.* 102, § 44, apply only to sales by executors or guardians made under that chapter, but have no application to this case.

It follows from these considerations that the only interest which Mary Jane Putnam took under her father's will was a bequest of personal property. It vested in her at the death of the testator. Her death before it was reduced to possession could not reconvert it into real estate or change its character. Having been bequeathed to her as personal property, it had all the incidents of property of that character, and upon her death is to be distributed as her personal estate. Her husband, as her administrator is entitled to receive it of the plaintiffs.

*Decree accordingly.*