WILLIAM CLAFLIN & others, trustees, vs. KATE ASHTON & others.

Suffolk. July 24, 1879. — March 2, 1880. ENDICOTT & SOULE, JJ., absent.

A testator bequeathed the residue and remainder of his property, at the death of his widow, to trustees, who, after the payment of certain legacies, were to divide the net rents and profits of the remainder, in equal shares, among his then surviving children during their lives, and to pay "the whole of each child's share of said rents and profits" to such child on its arriving at the age of twenty-one years; and "at the decease of any of my children, to transfer and convey to the heirs at law of such child the same aliquot part of the said residue and remainder of my estate, to which such child was entitled at the time of his or her decease, in the rents and profits thereof," in equal shares, free from the trusts. By a subsequent provision of the will, the testator directed that "in case of the death of my children, before the age of twenty-one years or without lawful issue," then the trustees, "all the above-named legacies being paid," should pay certain other legacies, and should also pay the residue and remainder of his property to a legatee named. The testator left a son and a daughter, both of whom survived their mother, and also left grandchildren, children of other daughters who died before him. The son, after the daughter became of age, died under age and unmarried. Held, that the legatees named in the subsequent clause were entitled to one half of the estate of the testator, including the income which had accumulated thereon since the death of the son.

BILL IN EQUITY, by the trustees under the will of John Ashton, to obtain the instructions of the court. Hearing before *Morton*, J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*E. D. Sohier & C. A. Welch*, for Kate Ashton.

*A. Hemenway*, executor of the will of a grandchild, *pro se.*

*C. F. Walcott & E. C. Perkins*, for the Massachusetts General Hospital.

MORTON, J. The will of John Ashton gives the residue and remainder of his property, at the death of his widow, to trustees, who by the fourth article are to pay certain legacies to his grandchildren George A. Lunt and Mary U. Goodrich. The fifth article provides that, the above-named legacies being paid, the trustees shall receive the rents and profits of the residue, and, after paying necessary charges and expenses, shall "divide the residue of such rents and profits, in equal shares, among my then surviving children, during their lives, so much of the share of any minor child, as in the judgment of the said

trustees may be needed for the maintenance and education of such child, to be paid to the legal guardian or guardians of such child, for that purpose, and the balance of such share, if any remain, to be reinvested by the trustees, for the general benefit of my estate; but the whole of each child's share of said rents and profits to be paid to such child from and after his or her arriving at the age of twenty-one years. 2d. At the decease of any of my children, to transfer and convey to the heirs at law of such child the same aliquot part of the said residue and remainder of my estate to which such child was entitled, at the time of his or her decease, in the rents and profits thereof; to have and to hold the same in equal shares to the said heirs at law, their heirs and assigns, in fee simple forever, free and discharged from the trusts hereby created."

The testator left a son, John Ashton, Jr., and a daughter, Kate Ashton, the children of his widow, Sophia G. Ashton. He also left the two grandchildren above mentioned, who were the children of his daughters by a former wife. Those two daughters died before the date of the will. Kate Ashton is living unmarried. John Ashton, Jr. died under age and unmarried, after the death of the testator's widow.

It seems to us clear that, under the fifth article, unless it had been controlled by other parts of the will, it would have been the duty of the trustees, at the decease of John Ashton, Jr., to transfer and convey to his heirs at law one half of the principal of the trust fund in their hands. They are directed, " at the decease of any of my children, to transfer and convey to the heirs at law of such child the same aliquot part of the said residue and remainder of my estate to which such child was entitled, at the time of his or her decease, in the rents and profits thereof." Although the trustees had a discretion as to the amount of the income of the share of each child which should be paid to his or her guardian, yet each child was entitled to the whole of the income if necessary for his maintenance and education. Throughout the article the testator uses the expression, "the share" of each child, clearly intending to designate the whole of the income of that part of the trust estate set apart for the benefit of such child. When he directs the trustees to transfer and convey to the heirs at law of a deceased child the same part of the

estate to which such child was entitled " in the rents and profits thereof," we have no doubt that he intended to designate that share of the estate set apart for the benefit of such child, and of which he might receive the rents and profits.

But the difficulty in the construction of this will arises from the ninth article, which provides that, " in case of the death of my children by my wife, S. G. Ashton, before the age of twenty one or without lawful issue, then the following division and disposition of my said property shall be made by my said trustees. All the above-named legacies and debts being paid, they shall further proceed to pay" certain legacies to his said two grandchildren and to other persons, which need not be mentioned in detail, and " all the residue and remainder of my property shall be given to the Massachusetts Hospital, for diseased and wounded soldiers;" with a further provision that, if the property bequeathed shall be insufficient to pay all said legacies, they shall be paid in full in the order in which they are named in the article.

The two articles, considered separately, are inconsistent and repugnant. They plainly refer to the same property, and, if construed literally and independently, each directs a disposition of it inconsistent with the other. But if the two are brought together and considered as parts of one scheme of disposition of the property, the result will be the same as if they both formed parts of one article of the will, and the repugnancy and difficulty of construction will not appear to be so great. The will may thus fairly be construed to read that the trustees are, at the decease of either of the children, to transfer and convey to the heirs at law of such child the share of the fund of which such child was entitled to receive the income, provided however that, in case such child shall die under age or without lawful issue, then the trustees shall pay the legacies named in the ninth article. Read in this form, the latter clause restricts and qualifies the prior devise to the heirs at law of a child, so that it operates only in case such child should die leaving issue.

We are of the opinion that this transposition and construction express and effectuate the intention of the testator. His scheme, to be inferred from the whole tenor of the will, seems to have been to provide a fund of which each of his children was to have one half of the income during his or her life ; if either

child died leaving issue, his or her share of the principal was to be transferred to such child's heirs at law, who would be such issue; but if either child died under age or without issue, the share of such child was to be divided among the legatees specified by the testator as the objects of his bounty. It is to be presumed that the testator intended that all the clauses of his will should have some operation and effect. It is not to be supposed that the purpose of the ninth article was to entirely revoke and annul the devise to the heirs at law of his children in the fifth article. Such a purpose, if entertained, would naturally have been expressed in direct language.

We think, as we have before intimated, that the purpose of the ninth article was to restrict and qualify the prior devise in the fifth article. Upon any other construction, we should be obliged to treat one or the other of the provisions as entirely inoperative. If the two provisions were to be regarded as incurably repugnant, perhaps the rule would apply that the clause in the will which is posterior in position should prevail; in which case, in the contingency which has happened, the result would be the same as it is upon the construction we have adopted. But, in construing this will, we must take our stand at the death of the testator, and look forward to all possible contingencies which might arise in the future. If John Ashton, Jr. had died after he became of age, leaving children, it would be impossible to reconcile with the intentions and purposes of the testator a construction of the ninth article which held that it wholly defeated and frustrated the prior devise, and thus left the children of John Ashton, Jr., the grandchildren of the testator, entirely unprovided for.

The result is that, in the contingency which has happened, namely, the death of John Ashton, Jr., under age and without issue, it was the duty of the trustees at his death to divide one half of the trust estate among the legatees named in the ninth article, paying them in the order of priority, as directed by the testator. As they were respectively entitled to their legacies at the death of John Ashton, Jr., it follows that the income which has since accumulated belongs to them, and should be divided among them in proportion to their legacies.

*Decree accordingly.*