ABBY S. T. HOVEY *vs.* GEORGE A. DARY & another.

Suffolk.    November 19, 1890. — May 20, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Devise in Trust — Sale of Land by Trustee — Proceeds as Real Estate.*

If a trustee under a will sells land, under a power of sale contained therein, the fund resulting therefrom takes the place of the land which yielded it, and, unless it appears that it was the intention of the testator that it should be converted into and remain personal estate, is to be treated as real estate until it reaches one who, if it had remained real estate, would take it to his own use absolutely, or with a power to make it his own for all purposes.

A testator by his will gave one ninth of the residue of his estate to trustees, directing them to pay the income thereof to his daughter for her life, and, upon her death leaving issue, to "convey to such issue, their heirs and assigns forever," equally, the share of which "the parent received the income." The executors were empowered to sell any or all the real estate, "the proceeds of such sales to be held and accounted for by said executors in lieu and instead of such real estate"; and the trustees, after the transfer of the property to them, were given "the same power of sale hereinbefore given and granted to my said executors, . . . provided, however, my said trustees are to hold the proceeds of such real estate as they may make sale of for the same uses and purposes, and none other, as the real estate so sold should have been held for." During the daughter's lifetime one of her sons, who survived her with other issue, conveyed by deed his interest in this ninth, and subsequently the trustees sold the land, part of it before the death of the grantee intestate. *Held,* that the proceeds of the sales

were to be treated by the trustees as real estate; and that the son's share thereof was to be paid to the heir at law of the grantee, and not to the latter's administratrix.

BILL IN EQUITY to compel George A. Dary, trustee under the will of Miriam W. Stedman, to pay over to Abby S. T. Hovey, administratrix of the estate of Charles A. Hovey, one quarter of one ninth of the residue of the estate of Mrs. Stedman. The case was heard by *Holmes*, J., who reported it for the consideration of the full court, in substance as follows.

The other defendant, who was joined by order of the court, is Miriam P. Adams, the daughter and heir at law of Charles A. Hovey. Mrs. Stedman by her will appointed her husband and two sons executors, and among other things gave six ninths of the residue of her estate to trustees, in trust to pay the income of one ninth to her son, Josiah Stedman, Jr., and the income of each of the other five ninths to each of her five daughters, one of whom was Miriam W. Priest, during their respective lives, and " in trust further, upon the decease of my said son Josiah Stedman, Jr., and of my said daughters as the same shall happen in the order of Providence, leaving issue, then to grant, surrender, and 'convey to such issue, their heirs and assigns forever, the said share or sixth part of which the parent received the income as aforesaid, to be equally divided among such issue, share and share alike; but in the event of the decease of my said son Josiah Stedman, Jr., or either of my aforesaid daughters, without leaving issue, then the share of said trust property, with all accumulation thereon, so devised for the use of such son and daughter so dying without issue, shall be held by my trustees aforesaid, for the use of my surviving sons or daughters, to be equally divided among them, and the shares devised in trust are to be held upon the like trusts and purposes herein already before declared and finally to be conveyed, divided, and distributed among their issue as hereinbefore provided; and in order to facilitate the settlement of my estate I do hereby authorize and empower my said executors hereinafter named, or such of them as shall accept the trusts, to grant, sell, alien, or convey any part or the whole of the real estate of which I shall or may die seised or possessed, at and for such prices or sums of money as he or they may think proper, with full power to sign, seal,

acknowledge, and deliver any deed or deeds which counsel learned in the law may judge necessary and proper to convey a complete and perfect title in fee simple to such real estate; the proceeds of such sales to be held and accounted for by my said executors in lieu and instead of such real estate, but without any obligation on the part of the purchaser or purchasers to see to the application of the purchase money, any law or usage to the contrary notwithstanding, and all this without any application to any court or courts for such license; and moreover, from and after the time of the transfer of my estate into the hands and custody of my said trustees, as in my said will is contemplated, I do give and grant to my said trustees the same power of sale hereinbefore given and granted to my said executors, authorizing my said trustees from time to time to convert real estate into personal and personal estate into real estate as convenience may require, provided however my said trustees are to hold the proceeds of such real estate as they may make sale of for the same uses and purposes, and none other, as the real estate so sold should have been held for."

In 1867, after the death of the testatrix, Josiah S. Priest, one of the sons of Miriam W. Priest, and two other sons of hers who did not survive her, conveyed by deed, in consideration of one thousand dollars, their interest under the will to Charles A. Hovey. The defendant trustee, acting under the power given by the will, and by direction of the Probate Court, sold most of the real estate, consisting of four separate parcels, for $31,300, two of them being sold in 1883 and 1885 respectively, and the remaining two in 1888. Hovey married a second time, and died on June 19, 1886, intestate, leaving a daughter, Miriam P. Adams, and a wife, the plaintiff. Mrs. Priest died on May 31, 1888, leaving issue, including Josiah S. Priest. It was agreed that, as things turned out, the deed to Hovey operated to convey one quarter of the ninth of which Mrs. Priest had enjoyed the income. The defendant, acting under a decree of the Probate Court made on November 12, 1888, paid over to Miriam P. Adams one quarter of the one ninth of the proceeds of the real estate sold by him. The only question considered was whether, as between the defendant trustee and the administratrix and the heir at law of Hovey, the proceeds of the sales made by the trustee were real or personal estate.

If the defendant was protected by this decree, or if the proceeds were to be treated as real estate, the bill was to be dismissed; otherwise, a decree was to be entered for the plaintiff.

The case was argued at the bar in November, 1890, and afterwards, in February, 1891, was submitted on the briefs to all the judges.

*H. Dunham*, for the plaintiff.

*A. E. Denison & J. M. Lesser* (of California), for the defendants.

BY THE COURT. By the will of Mrs. Miriam W. Stedman she devised one ninth part of the residue of her estate to trustees, upon the trust to pay the income thereof for life to her daughter, Mrs. Miriam W. Priest, and upon the further trust that, if Mrs. Priest should decease leaving issue, then " to grant, surrender, and convey to such issue, their heirs and assigns forever," the share of which " the parent received the income as aforesaid, to be equally divided among such issue, share and share alike." Mrs. Priest deceased on May 31, 1888, leaving issue, and before her death three of her children conveyed to Charles A. Hovey, the plaintiff's intestate, their interest in the estate of which their mother had the income, by a deed which operated, as it is agreed, to convey one quarter of this ninth. Hovey died on June 19, 1886, leaving a daughter, Mrs. Miriam P. Adams, who was his sole heir at law. He had also been married for the second time, and left a widow, who is the administratrix bringing this bill.

The fourth of the ninth part which had belonged to Hovey has been paid over to the defendant, Mrs. Adams, under a decree of the Probate Court, which she sets up as conclusive of her right to it, and which the plaintiff claims is invalid. As we think that Mrs. Adams, as the heir of Hovey, is entitled to the money as real estate, and that the plaintiff as his administratrix has no right to it, we do not find it necessary to consider the character or effect of the decree of the Probate Court.

Where executors or trustees are directed to convert real estate into personal, it will more readily be inferred that the proceeds of such realty are to be held as personal property than where power and authority merely are conferred upon the executor thus to change investments. In the former case, the direction shows, or tends to show, that the testator has contemplated and understands the change that may be made in the rights of vari-

ous parties by the change in the form of the property, while in the latter case it is less easy to suppose that he has confided to another the right and power to determine at his own discretion whether the descent or devolution of the property shall be changed by the new form which the property may assume by reason of the sale. That money derived from the sale of real estate will retain the character of real estate, and be subjected to the incidental rights which attend property in that form, will not be doubted, if such has been the clearly expressed intention of the party authorizing the conversion. Where leave is given under the statute to an executor or administrator to sell real estate for the payment of debts, if there be a surplus, it is considered real estate, to descend and to be disposed of as if it were actually so. Pub. Sts. c. 142, § 9.

In determining what were the rights of Hovey, or those acquired under him, it will be advisable first to inquire whether, if his grantor, Josiah S. Priest, who was one of the sons of Miriam W. Priest, had not conveyed his interest under the will, he would have taken the amount of the fourth of the ninth as realty. It is to be observed that the will contains no direction to turn the real estate into money, but a power only, and the power given to the trustees is apparently for convenient management merely. The executors or trustees might sell the whole, or any part of it, but it is not readily admissible that the testatrix intended that either should thus be invested with any authority to change the rights of those beneficially entitled thereto. After authorizing the executors to convey any portion of the realty, the testatrix adds, " the proceeds of such sales to be held and accounted for by my said executors in lieu and instead of such real estate." After the transfer of the property to trustees, the same authority to convert real estate into personal is conferred upon them, and then follows the proviso already quoted, by which the proceeds of the real estate, so far as the trustees exercise their power to make sale thereof, are to be held " for the same uses and purposes, and none other, as the real estate so sold should have been held for." The object of this language is to guard against any inference that by the change into personalty the property sold is to lose the character of realty, or that its descent or disposition is to be in any way altered, or any change made in the ben-

eficiaries or their proportions.　In *Holland* v. *Cruft*, 3 Gray, 162, it was held that, where real estate, specifically devised by a will which authorizes the executor or administrator to sell any of the testator's real estate and reinvest the proceeds in personal estate, but does not manifest any intent thereby to alter the disposition of the property, is legally converted into personalty, the proceeds are to go to the same persons, and in the same proportions, as if it had remained real estate.　When land is converted into money, as by a trustee with power to sell, unless there is an intent manifested by the settler of the trust that its disposition shall be thereby changed, the fund takes the place of the land which yielded it, to be applied and disposed of in the same manner, until the object of the trust is accomplished.　The general rule is, that it is only when it appears that it was the intention of the testator to convert real estate into personal, and definitely to affix to it the latter character, that the law will treat the estate as personal for all the purposes to which the intention of the testator extends.　*Hammond* v. *Putnam*, 110 Mass. 232.

So far is this from appearing in the case at bar, the language of the testatrix heretofore quoted shows a clearly expressed intention that the proceeds of her real estate, if sold, shall be held for all purposes as real estate.　The trustee, so far as Josiah S. Priest was concerned, held the proceeds of the real estate as realty, and so far as he and the trustee were concerned, they would not lose that character until as such they reached him.　" As a general rule to be deduced from the cases, we think," says Chief Justice Shaw, "that in case. of such conversion of real into personal estate, to stand in place of the real, as more beneficial to the parties, without changing the beneficial destination, the character thus impressed on the money will attach to it, until it reaches one who, if it had remained real estate, would take it beneficially, that is, to his own use absolutely, or with a power, like that of tenant in tail in possession, to dispose of it absolutely, or make it his own to all purposes, and it will then be his absolutely." *Holland* v. *Adams*, 3 Gray, 188, 191.　While upon reaching him the proceeds would not have retained their artificial character, Priest would yet have received them as realty.

The conveyance by Priest to Hovey did not change the character of the estate or the construction of the will.　The estate

was received by Hovey as real estate, and the proceeds of it when it was sold continued to be real estate as long as it remained under the operation of the will. At the death of Hovey two parcels had been sold and two remained unsold, but the whole constituted one fund made by the will real estate, and the interest in the whole passed to the heirs of Hovey.

*Bill dismissed.*