JOSHUA THISSELL & another, executors, *vs.* CHARLES
SCHILLINGER & others.          .

Worcester.    May 18, 1904. — June 22, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Devise and Legacy*, Construction.

A will contained the following provisions: " I give and bequeath all the rest and
residue of my personal property to my brother C. and at his decease to de-
scend to his family to be divided among them in accordance with the laws of
the State of Maine." The next paragraph was as follows: " In order to carry
out the provisions of this my last will and testament, I hereby direct my execu-
tors hereinafter named to bargain sell and dispose of all my real estate in Clin-
ton aforesaid, either at private sale or public auction as in their judgment they
may deem wisest and best, to make deed or deeds for conveyance of same." In
the preceding portion of the will was a bequest of $7,000 in trust for the testa-
trix's brother C. for life with a remainder to two of his children alternatively.
The will was made about three weeks before the death of the testatrix. Her
personal property was insufficient by the amount of $5,000 to pay charges, debts
and legacies, and the residue consisted wholly of real estate. *Held*, that the
residue was to be converted into personal property and was bequeathed to the
testatrix's brother C. absolutely.        ˙

BILL IN EQUITY, filed in the Probate Court for the county of
Worcester, June 3, 1902, by the executors under the will of
Ellen H. Worcester, late of Clinton, for instructions.

The Probate Court made a decree that by the true construc-
tion of the will the proceeds of real estate sold by the executors
and remaining after the payment of debts, charges of adminis-
tration and pecuniary legacies should be divided among the heirs
at law of Ellen H. Worcester as intestate property, and that,
inasmuch as the personal property of the deceased was insuffi-
cient to pay said debts, charges, and pecuniary legacies, the
respondent, Charles Schillinger, and his family took nothing
under the fifteenth clause of the will. The respondent Charles
Schillinger appealed.

The case came on to be heard before *Hammond*, J., who at
the request of the parties reserved it on the pleadings and agreed
facts for determination by the full court.

Ellen H. Worcester died on January 5, 1902. Her will, dated

December 18, 1901, and allowed on January 28, 1902, omitting the introductory clause and the attesting clauses, was as follows:

" After the payment of my just debts and funeral charges, I bequeath and devise as follows:

" First. I give and bequeath to my brother Charles Schillinger of New Gloucester, State of Maine, the income of seven thousand ($7000) dollars during his life time. The principal sum of ($7000) to be safely invested and held in trust by some suitable person to be appointed by the Selectmen of the town of New Gloucester and approved by the Judge of Probate of the County of Cumberland, State of Maine, said trustee to pay to my aforesaid brother Charles Schillinger semi-annually the income only as it shall become due.

" Second. At the decease of my brother Charles Schillinger I hereby direct my aforesaid trustee to pay over the income only of the above invested 'amount ($7000) to my nephew Charles Ernest Schillinger, son of my brother Charles Schillinger semi-annually as it shall become due, until he shall arrive at the age of thirty years at which age he is to come into possession of the principal sum ($7000), Provided, that my said nephew, Charles Ernest Schillinger should decease before arriving at the age of thirty years then I give and bequeath the income of the above mentioned invested amount ($7000) to my niece Helen A. Schillinger daughter of my brother Charles Schillinger to be paid to her semi-annually by my aforesaid trustee, as it shall become due, until she shall arrive at the age of thirty years, at which age she is to come into possession of the principal invested sum ($7000).

" Third. I give and bequeath to my sister Mary M. Green, now of Freeport, Maine, the sum of two hundred dollars to be paid to her within one year from my decease.

" Fourth. I give and bequeath to my brother Jeremiah Schillinger now of Danforth Washington County, Maine, the sum of two hundred dollars to be paid to him, within one year from my decease.

" Fifth. I give and bequeath to my niece Harriet E. Schillinger now of Poland, Maine, the sum of two hundred dollars to be paid to her within one year from my decease.

"Sixth. I give and bequeath to my niece Mary Ellen Dunn now of San Francisco, California the sum of two hundred dollars to be paid to her within one year from my decease.

"Seventh. I give and bequeath to my three nieces Mary Schillinger, Betsy Schillinger and Ellen W. Deering, daughters of my brother Jeremiah Schillinger now of Danforth, Washington County, Maine, to each the sum of two hundred dollars to be paid to each of them within one year from my decease.

"Eighth. I give and bequeath to my two nieces Ellen H. Harrington and Addie Hodson, daughters of my sister Mary W. Green, now of Freeport, Maine to each the sum of two hundred dollars to be paid to each of them within one year from my decease.

"Ninth. I give and bequeath to my niece Mary Gray daughter and only child of my brother Henry Schillinger the sum of two hundred dollars to be paid to her within one year from my decease.

"Tenth. I give and bequeath to my niece Annie Schillinger only daughter of my brother Charles Schillinger now of New Gloucester, Maine, the sum of two hundred dollars to be paid to her within one year from my decease.

"Eleventh. I give and bequeath to my two nephews Lewis Schillinger now of Windham, Maine and Benjamin Schillinger now of Poland, Maine, sons 'of my brother Daniel Schillinger, to each, the sum of twenty five dollars to be paid to each of them within one year from my decease.

"Twelfth. I hereby order and direct my executors hereinafter named to procure and set up on my lot No. 205 in Woodlawn Cemetery, Clinton, Mass. an appropriate monument of quincy Granite with inscription of names thereon of persons buried on said lot, inscriptions to be on head stones, and the name Worcester, on monument, all at a cost not exceeding one thousand dollars. Also the right to use sell or dispose of the granite monument and curbing around said lot. Providing I have not had it done and completed during my lifetime.

"Thirteenth. I give and devise to the town of Clinton the sum of one hundred and fifty dollars the interest only to be expended under the direction and supervision of the Cemetery Committee appointed by the town of Clinton for the perpetual

care of my lot #205 in Woodlawn Cemetery Clinton Mass. and in accordance with the By Laws of said town of Clinton.

"Fourteenth. I give and bequeath the sum of three thousand ($3000) dollars to be held in trust by some suitable person to be appointed by 'the selectmen of the town of Poland, Maine, and approved by the Judge of Probate, of the County in which said Poland is situated and the income only to be expended for the support of my nephew Benjamin Schillinger and his sister. Harriet E. Schillinger. At their decease the principal sum ($3000) to descend to the family of the said Benjamin Schillinger and divided among them in accordance with the laws of the State of Maine.

"Fifteenth. I give and bequeath all the rest and residue of my personal property to my brother Charles Schillinger and at his decease to descend to his family to be divided among them in accordance with the laws of the State of Maine.

"Sixteenth. In order to carry out the provisions of this my last will and testament, I hereby direct my executors hereinafter named to bargain sell and dispose of all my real estate in Clinton aforesaid, either at private sale or public auction as in their judgment they may deem wisest and best, to make· deed or deeds for conveyance of same.

"Seventeenth. I ordain and appoint Joshua Thissell and Jonathan Smith of Clinton, Mass. as sole executors of this my last will and testament."

Here followed the attesting clauses with the signatures of the testatrix and the witnesses.

The bill prayed for instructions upon the following questions:

"First: Does the fifteenth paragraph of said will give to said 'Charles Schillinger and at his decease to descend to his family' the entire residuum of said estate, whether the same be real or mixed estate, as well as the personal property specially named in said paragraph?

"Second: Who are entitled to the residuum if the same being real estate, Charles Schillinger and family, or is the same to be divided among the legal heirs of said deceased by right of representation?

"Third: Are proceeds of the real estate, if the same should be sold by the executors as provided in the sixteenth paragraph

of said will, to be treated by them in the final distribution as real estate or as personal property under the laws of Massachusetts?

"Fourth: Do the provisions of said paragraph fifteen create a trust in favor of the children or heirs at law of Charles Schillinger or is the gift absolute to him without any trust?"

*G. H. Sturgis,* (of Maine,) & *D. I. Walsh,* for the defendant Charles Schillinger.

*A. F. Moulton* & *L. M. Webb,* for the defendant Jeremiah Schillinger and others.

BRALEY, J. In the interpretation of the will of the testatrix and in order to ascertain her intention all the clauses of the instrument are to be considered, and given effect where this is possible unless such a construction becomes inconsistent with her manifest purpose. *Shattuck* v. *Balcom,* 170 Mass. 245, 251.

Between the date of its execution and her death a period of less than a month elapsed, and upon the will being admitted to probate the inventory disclosed the value of the real estate to be largely in excess of the personal property, and it must be presumed that she knew that the latter was insufficient to pay the pecuniary legacies, and that the realty would have to be sold for this purpose.

But the appellees urge that the power to convert given to the executors is not general, and is qualified by a limitation to the use of so much of the proceeds as may be necessary to pay the legacies found in the first fourteen clauses, and after this has been done if the whole has not been used, the remainder is impressed with a resulting trust in favor of her heirs at law, as the fund takes the place of the land out of which it arose. *Blake* v. *Dexter,* 12 Cush. 559, 570. *Holland* v. *Cruft,* 3 Gray, 162, 180.

It was within her power to limit such sale to so much as might be needed to make up any deficiency after the personalty had been exhausted, but instead of this she directed by the sixteenth clause that the executors should convert the real property into personal, and conferred upon them ample power to accomplish this object.

On resort being had to the language used its significance is apparent, "In order to carry out the provisions of this my last

will and testament, I hereby direct my executors . . . to . . . sell and dispose of all my real estate . . . ." By these words no discretionary authority is given, but the direction is imperative, and the executors are absolutely obliged to make the conversion, and its proceeds are thereafter to be held and treated as personal property, for the gifts to the legatees, including the residue, are bequests of money which could only be paid after the sale.

This clause would have no greater force as an indication of her general intention if it preceded the other parts of the will, for it is a well settled rule of construction that words, sentences and clauses may be transposed if by the transposition the purpose of a testator is found, and thereby all the provisions of a will are harmonized and given effect. *Claflin* v. *Ashton*, 128 Mass. 441, 443. *Boston Safe Deposit & Trust Co.* v. *Coffin*, 152 Mass. 95, 98.

If this rule is applied to the will under consideration none of its articles are found to be inconsistent, but all form part of a plainly expressed design for the distribution under it of her entire estate.

After making provision for the improvement and permanent care of her burial lot she makes a number of bequests, all of which are general legacies, and in no instance is there a devise of any portion of the realty, and it may fairly be inferred that she must have intended that her executors should change all her real estate into money, and this united with the personal property provided a common fund from which these legacies were to be paid, and if any residue was left it should go to her brother. *Hammond* v. *Putnam*, 110 Mass. 232.

As she gave to the proceeds of the real estate the quality of personalty the equitable conversion may be considered as actually made at her death, and must be distributed as she intended. *Hammond* v. *Putnam, ubi supra. Perkins* v. *Coughlan*, 148 Mass. 30.

By this construction a partial intestacy is avoided and all the provisions of the will are given their appropriate effect, a conclusion to be preferred rather than a result which rejects the fifteenth clause, and construes the sixteenth as giving the executors an authority to sell, but limited to the extent of making up

any deficiency of personalty, and after this has been completed gives to the surplus remaining the quality of real property.

It must therefore be held that after the payment of debts, general legacies and charges of administration, the residue is to be paid to Charles Schillinger, who takes an unlimited use of the gift; as the testatrix by the first clause of her will had created a trust for his benefit, and if she had intended a similar restriction in his enjoyment of her further bounty, she would not have employed language the legal effect of which was sufficient to vest in him a full and unrestricted right to the possession of the principal. *Homer* v. *Shelton,* 2 Met. 194, 206. *Howland* v. *Howland,* 100 Mass. 222. *Taggard* v. *Piper,* 118 Mass. 315. See *Chase* v. *Chase,* 132 Mass. 473; *Sherburne* v. *Sischo,* 143 Mass. 439, 442.

The decree of the Probate Court must be reversed, and a decree entered in accordance with this opinion.

*So ordered.*