CORNELIUS N. BLISS, JR., & others, executors, *vs.* CORNELIUS N. BLISS, JR., & others.

Suffolk.    March 17, 1915. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Tax,* On legacies and successions.

Promissory notes of a firm of five partners having offices in the State of New York, where two of the partners had their domicil, and in the State of Illinois, where one partner had his domicil, and in this Commonwealth, where two partners had their domicil, drawn and made payable in Boston to one of the New York partners and owned and kept by him in New York at the time of his death there, were not subject to the succession tax imposed by St. 1909, c. 490, Part IV, § 1, as amended by St. 1909, c. 527, § 1, where it appeared that the articles of co-partnership provided that the death of a partner should not dissolve the partnership but that the surviving partners should carry on the business with the right to use the firm name and to be entitled to its good will, that the accounts of the Boston office were kept separate from those of the other two offices, and that under the laws of the State of New York actions could have been brought upon the notes there and could have been prosecuted to judgments, for the satisfaction of which there was ample property of the firm in that State at the time of the testator's death; because the succession of the notes or their proceeds did not depend in any degree upon the moral or legal support or actual assistance of the laws of this Commonwealth. It was not material that for some purposes the Boston office was treated as the principal or home office of the firm, that the notes actually were paid by the Boston office of the firm, and that for reasons not relating to the notes the executor of the will of the owner of the notes resorted to the courts of this Commonwealth.

Registered bonds of this Commonwealth which were owned by a non-resident at the time of his death and were kept by him at the place of his domicil were subject to the succession tax imposed by St. 1909, c. 490, Part IV, § 1, as amended by St. 1909, c. 527, § 1.

Where, under the law of the State of New York governing the succession tax in that State, a tax on successions was imposed on all tangible personal property in that State owned by a non-resident, and all intangible property of a non-resident, including bonds and shares of stock in foreign corporations, was not subject to the tax, a "like exemption" is made in favor of citizens of this Commonwealth to that given to non-residents by the provisions of St. 1909, c. 490, Part IV, § 3, as amended by St. 1911, c. 502, § 1, and therefore those provi-

sions apply in the assessment of a succession tax upon registered bonds of this Commonwealth and shares of the capital stock of Massachusetts corporations owned by one who died domiciled in the State of New York, and such property was subject only to such portion of the tax as was in excess of the tax imposed by the laws of the State of New York.

Shares of the capital stock of Massachusetts corporations owned by one domiciled in another State at the time of his death were subject to the succession tax imposed by St. 1909, c. 490, Part IV, § 1, as amended by St. 1909, c. 527, § 1.

PETITION, filed in the Probate Court on January 15, 1914, under St. 1909, c. 490, Part IV, § 21, by the executors of the will of Cornelius N. Bliss, late of New York City, and afterwards amended, to determine whether the petitioners should pay a tax of $43,662.01 certified by the tax commissioner to be due as a succession tax upon the following property of the testator:

Interest in the accumulated profits of Bliss, Fabyan
  and Company, Boston office, valued at          $3,220.28
Interest in the accumulated profits of Bliss, Fabyan
  and Company, New York and Chicago offices,
  valued at          8,178.94
Two promissory notes of Bliss, Fabyan and Com-
  pany, with accrued interest, valued at          1,519,178.20
$10,000 principal amount of bonds of the Common-
  wealth of Massachusetts, registered, maturing
  1935, bearing interest at the rate of 3½ per cent
  per annum, valued at          9,446.25
Shares of stock in various Massachusetts corpora-
  tions, valued at          793,949.20

The petition was heard in the Probate Court by *Grant,* J., and a decree was made that the interest in the accumulated profits of the New York and Chicago offices of Bliss, Fabyan and Company and the registered bonds of the Commonwealth of Massachusetts were not "property within the jurisdiction of the Commonwealth" within the meaning of St. 1909, c. 490, Part IV, § 1, as amended by St. 1909, c. 527, § 1, and were not subject to the tax; that the shares of stock in Massachusetts corporations, the interest in the accumulated profits of the Boston office of Bliss, Fabyan and Company, and the two promissory notes of Bliss, Fabyan and Company were "property within the jurisdiction of the Commonwealth" within the meaning of the statute; that the shares in Massachusetts corporations, the two promissory notes

of Bliss, Fabyan and Company, and the interest in the accumulated profits of the Boston office of Bliss, Fabyan and Company were subject to the legacy or succession tax only to the extent of such portion of the tax as was in excess of the tax imposed thereon by the succession tax law of the State of New York, which portion in excess appeared to be the sum of $99.06; that the certification of the tax by the tax commissioner was not correct; and that the petitioners were liable for a tax amounting to $99.06.

The petitioners appealed from the decree so far as it determined that the notes of Bliss, Fabyan and Company were "property within the jurisdiction of the Commonwealth" and subject to the succession tax, and the Treasurer and Receiver General appealed from that portion of the decree relating to the registered bonds of the Commonwealth.

The case was reserved by *Carroll*, J., upon the pleadings, decree, claims of appeal and objections to the decrees and an agreed statement of facts, for determination by the full court.

*R. Ernst*, for the executors, stated the case.

*W. H. Hitchcock & A. E. Seagrave*, Assistant Attorneys General, for the Treasurer and Receiver General.

*T. N. Perkins & B. L. Young*, for the individual respondents.

RUGG, C. J.  1. The first question presented is whether certain promissory notes executed by a copartnership known as Bliss, Fabyan and Company to the order of Cornelius N. Bliss and owned and kept by him in New York, the State of his domicil, are subject to a succession tax in this Commonwealth, he having deceased, testate, a resident of New York in October, 1911. Bliss, Fabyan and Company, the makers of the notes, were at the date of the death of the testator, wholesale dry goods merchants with offices in the cities of Boston, New York and Chicago. The testator, a resident of New York, was the senior partner, one other partner was domiciled in New York, one in Chicago and two in Massachusetts. The copartnership articles of Bliss, Fabyan and Company in effect on the date of the testator's death provided that the death of any partner should not dissolve the partnership, so far as concerned the other partners, but that the surviving partners should carry on the business with the right to use the firm name and be entitled to its good will. The accounts of the New York and Boston offices of the copartnership were kept separately,

the Chicago office being treated as a branch of the New York office, complete records of the firm being kept only in Boston. Under the laws of the State of New York action could have been brought in that State upon the notes of the copartnership held by the decedent, and judgment had for the amount due on the notes. There were at the time of the death of the testator assets of the copartnership in the State of New York applicable to the satisfaction of such a judgment sufficient in amount to meet the same, and the notes could have been collected by the estate of the testator in New York without the aid of the courts of this Commonwealth. The notes were in fact paid by checks drawn and signed in Boston and mailed to the executors of the testator in New York. The notes also were drawn and made payable in Boston.

The governing statute is St. 1909, c. 490, Part IV, § 1, as amended by St. 1909, c. 527, § 1, (the death of the decedent having occurred before the enactment of St. 1912, c. 678,) which provides that "all property within the jurisdiction of the Commonwealth, corporeal or incorporeal, and any interest therein, whether belonging to inhabitants of the Commonwealth or not, which shall pass by will . . . shall be subject to a tax. . . ."

We are of opinion that these notes are not subject to the tax. They were not physically within the Commonwealth at the time of the death of their owner. They were the property of an owner who was not a resident of this Commonwealth but who was domiciled in a sister State. Promissory notes are intangible property. The *situs* of such property commonly is at the domicil of its owner. The extent of the power of a State, whatever it may be, to declare the *situs* of such property physically within its borders for the purpose of levying a tax on it, *Buck* v. *Beach,* 206 U. S. 392, *Wheeler* v. *New York,* 233 U. S. 434, is not involved here because the notes were not in this Commonwealth at the time of the death of their owner. If it be assumed that the *situs* of a simple debt may be declared by the sovereign power to be at the domicil of the debtor, that does not control the decision of the point now presented. The maker of these notes was a partnership. It had a place of business, ample assets to meet the obligations, and a resident partner within the State of New York upon whom legal service could be made binding enough property of the partnership,

to secure the payment of the notes. There was no occasion for the creditor to resort to our courts to give validity to the notes. The creditor did not and did not need to depend upon our law for the collection of his debt. The circumstance that for some purposes the office of the partnership in Boston was treated as its principal or home office, has no decisive effect. It was not the place to which the creditor was required to come to collect his debt. Nor does the fact that the notes were made in Boston and were payable there necessarily give them a *situs* for taxation purposes in Massachusetts. *State Tax on Foreign-held Bonds,* 15 Wall. 300. The mere accident that for other reasons the executors of the will of the owner of these notes resort to our courts does not of itself confer jurisdiction to impose a succession tax on these notes. The doctrine of *Blackstone* v. *Miller,* 188 U. S. 189, does not reach to a case like the present. The tax sought to be collected is, a succession tax. It is apparent that the succession of these notes or their proceeds does not depend under the circumstances here disclosed in any degree upon the moral or legal support or actual assistance of our laws. The sovereign power of this Commonwealth could not by any effort reach to the persons of the co-partnership in such way as to prevent, or regulate practically in any particular, the succession of these notes, or their proceeds, when collected, from the debtor to the estate of the testator or from that estate to the legatees. New York has complete jurisdiction over the notes both because physically they are there and the owners, the executors, are domiciled there, and because the partnership maker of the notes has one of its usual places of business, a large amount of its property and the domicil of one of its members in that State. The law of Massachusetts does not need to be invoked in any respect. The sanction of the law of New York alone gives completion to the succession from its beginning to its end. Hence, without considering other aspects of this contention, there is no sound foundation for any succession tax in this Commonwealth. This conclusion is in harmony with *Matter of Gordon,* 186 N. Y. 471.

2. The next point to be decided is whether a registered bond of the Commonwealth owned by a non-resident and kept at his domicil is subject to the succession tax. That point never has been decided in this Commonwealth. As to bonds in general, it was

referred to and left open in *Kinney* v. *Treasurer & Receiver General*, 207 Mass. 368. In that case it was said by Knowlton, C. J., at page 369, respecting our succession tax law: "This language indicates an intention on the part of the Legislature to tax all property that it has the power to tax. The statute is as broad as the jurisdiction of the Commonwealth." See also *Peabody* v. *Treasurer & Receiver General*, 215 Mass. 129. That must be accepted as the meaning of the tax act in the case at bar.

It was held in *Blackstone* v. *Miller*, 188 U. S. 189, that for the purpose of a succession tax a simple debt and a deposit in a trust company were property within the jurisdiction of New York, which was the State of the debtor although the creditor was a non-resident. It there was said: "If the transfer of the deposit necessarily depends upon and involves the law of New York for its exercise, or, in other words, if the transfer is subject to the power of the State of New York, then New York may subject the transfer to a tax. . . . But it is plain that the transfer does depend upon the law of New York, not because of any theoretical speculation concerning the whereabouts of the debt, but because of the practical fact of its power over the person of the debtor. . . . Power over the person of the debtor confers jurisdiction." It is not necessary to determine whether that declaration of law can be wrested from its application to the facts of a simple debt, then before the court, and made applicable broadly to debts manifested by bonds or notes. The peculiar circumstance of a registered bond of the State itself differentiates the case at bar from that general class. Applying the test quoted above from *Blackstone* v. *Miller* to the registered bond of the Commonwealth, it results in holding it subject to the transfer tax. The Commonwealth cannot be sued on the bond in the federal courts. Article 11 of the Amendments to the United States Constitution. The Commonwealth can be impleaded only in its own courts. R. L. c. 201. *McArthur Brothers Co.* v. *Commonwealth*, 197 Mass. 137. *Smith* v. *Reeves*, 178 U. S. 436. The bond could not be collected by any process in the courts except by invoking Massachusetts law. The bond being registered can only be transferred by bringing it to the proper registration officer of this Commonwealth and there complying with the law of the Commonwealth respecting transfer of registration.

It follows from the fact that this is a registered bond of the

Commonwealth that it must be registered in accordance with R. L. c. 6, § 74, which requires that the Auditor and the Treasurer and Receiver General shall keep a register of the "dates, numbers and amounts, the names of the persons to whom they were issued" and that other like bonds may be issued by the treasurer in substitution for any such "indorsed bonds presented to him." They therefore are made payable to a particular individual. They are not negotiable in the ordinary sense and can be transferred only after indorsement by surrender to the State treasurer and the issue of new bonds in place of those indorsed and surrendered. See *Benwell* v. *Newark*, 10 Dick. 260, 263.

Since the tax is upon succession to property, it may be levied by the State where the succession of necessity must take place; or in other words, where alone the effectual transfer of the legal title, as manifested by the essential factor of change of registration, can be consummated. *Keeney* v. *New York*, 222 U. S. 525, 537. Complete *indicia* of legal title does not pass to the purchaser of such a bond except by transfer by registration. Simple delivery or indorsement is not sufficient to transfer an absolute ownership in the sense that no further act is required to perfect the right of the purchaser. *Herbert* v. *Simson*, 220 Mass. 480.

The executors of the decedent owner could not enforce the recognition of a transfer by change of registration of the bond except by resort to our courts. They would have no authority to do this except by ancillary appointment by the courts of this Commonwealth. *Goodwin* v. *Jones*, 3 Mass. 514. The fact that the Commonwealth was debtor would give jurisdiction for such appointment. For the purpose of giving jurisdiction for the appointment of an administrator of the estate of a non-resident creditor, debts are assets at the domicil of the debtor. *Pinney* v. *McGregory*, 102 Mass. 186. *Wyman* v. *Halstead*, 109 U. S. 654. Diversity of citizenship alone would not confer upon the executors of the will of the testator a right to prosecute an action in the courts of the United States sitting in this State, until ancillary administration had been taken out in the courts of this State, even apart from art. 11 of the Amendments to the Federal Constitution. *Johnson* v. *Powers*, 139 U. S. 156. In this regard the federal courts follow the practice of the State courts. *Hayes* v. *Pratt*, 147 U. S. 557, 569. From every point of view, the resort must be had to the juris-

diction of this Commonwealth in order to perfect a transfer of the bond.

That there is no insuperable objection to the separation of the obligation to pay from the instrument itself, and to its localization at the domicil of the debtor is shown by *Metropolitan Life Ins. Co.* v. *New Orleans,* 205 U. S. 395. In that case the notes or other paper evidences of indebtedness were kept without the jurisdiction of the taxing State and yet it was held that they had a business *situs* in the State of the debtor.

To pursue the distinction between the case at bar and *State Tax on Foreign-held Bonds,* 15 Wall. 300, pointed out by Mr. Justice Hughes in *Liverpool & London & Globe Ins. Co.* v. *Orleans Assessors,* 221 U. S. 346, at page 355, the bond in question was not executed, delivered and made payable outside the State, but in a peculiar sense by reason of registration the State retained a kind of jurisdiction over it. "If locality, in the sense of subjection to sovereign power, could be attributed" under any circumstances to such an instrument as a registered State bond, it could be localized in Massachusetts by reason of the facts already dwelt upon. As was further said at page 354, "The debt, of course, is not property in the hands of the debtor; but it is an obligation of the debtor and is of value to the creditor because he may be compelled to pay; and power over the debtor at his domicil is control of the ordinary means of enforcement." Under all the conditions here presented, there is a *situs* for the purpose of succession in the State issuing the bond. *Kinney* v. *Treasurer & Receiver General,* 207 Mass. 368. *Rothschild* v. *Knight,* 176 Mass. 48, 54. See 15 Columbia Law Rev. 377.

It is urged against this result that, sound as it may be as to simple debts, it cannot prevail as to bonds on the ground stated by Mr. Justice Holmes in *Blackstone* v. *Miller,* 188 U. S. 189, at page 206, in these words: "Bonds and negotiable instruments are more than merely evidences of debt. The debt is inseparable from the paper which declares and constitutes it, by a tradition which comes down from more archaic conditions. *Bacon* v. *Hooker,* 177 Mass. 335." Or as it was put in *New Orleans* v. *Stempel,* 175 U. S. 309, 322, 323: "It is well settled that bank bills and municipal bonds are in such a concrete tangible form that they are subject to taxation where found, irrespective of the domicil of the owner. . . .

Notes and mortgages are of the same nature. . . . We see no reason why a State may not declare that if found within its limits they shall be subject to taxation." The peculiar characteristics of bonds again are referred to and emphasized in *Wheeler* v. *New York*, 233 U. S. 434, 439, *Selliger* v. *Kentucky*, 213 U. S. 200, 204, and *Buck* v. *Beach*, 206 U. S. 392, 403, 413.

However forceful this argument might be as to notes and bonds completed title to which passes by delivery, or which may be enforced without resort to the State courts, we think that it is not applicable where the transfer cannot become effective without bringing the bond into this jurisdiction and submitting it to the inspection and registration of the officers of the State or compelling the performance of these duties by aid of State courts. To this extent the main doctrine of *Blackstone* v. *Miller*, 188 U. S. 189, governs the case at bar.

There seems to us to be nothing inconsistent with this conclusion in *State Tax on Foreign-held Bonds*, 15 Wall. 300, as it has been narrowed by later cases. In that decision "considering only the place of the property, it was held that bonds held out of the State could not be reached. The decision has been cut down to its precise point by later cases." Mr. Justice Holmes, in *Blackstone* v. *Miller*, 188 U. S. 189, at page 206. Moreover, it is to be remembered that "The succession or inheritance tax is not a tax on property, as has been frequently held." *Buck* v. *Beach*, 206 U. S. 392, 408. A succession tax may be upheld when a property tax could not stand. Nor do we regard *Matter of Bronson*, 150 N. Y. 1, and *Matter of Fearing*, 200 N. Y. 350, as inconsistent with this conclusion. In those cases it was held under a succession tax law similar in this respect to our own, that bonds of a domestic corporation owned by a non-resident and kept by him at his domicil, and which do not appear to have been registered, were not subject to succession tax in New York. That question is not presented in the case at bar and is left quite open, to be decided on its merits when it arises.

3. The next point for decision is whether this bond is exempt from taxation under that part of St. 1909, c. 490, Part IV, § 3, as amended by St. 1911, c. 502, § 1, which provides that, "Property of a non-resident decedent which is within the jurisdiction of the Commonwealth at the time of his death, if subject to a tax of like

character with that imposed by this part by the law of the State or country of his residence, shall be subject only to such portion of the tax hereby imposed as may be in excess of such tax imposed by the laws of such State or country; provided, that a like exemption is made by the laws of such other State or country in favor of estates of citizens of this Commonwealth, but no such exemption shall be allowed until such tax provided for by the law of such other State or country shall be actually paid, guaranteed, or secured in accordance with law."

It is conceded by all parties that a tax on successions is imposed by the State of New York, the domicil of the decedent, and that under the law governing the succession tax in that State, all tangible personal property of a non-resident in New York is subject to the tax and all intangible property, including bonds, of a non-resident within that jurisdiction is not subject to the tax. This provision is general and quite independent of any correlative concession by other States. N. Y. St. 1911, c. 732, §§ 220, 243.

It is contended in behalf of the Treasurer and Receiver General that this failure on the part of New York to attempt to tax in any instance the succession on intangible property of a deceased non-resident is not a compliance with the terms of our exemption clause. The argument in substance is that, in order that it fairly can be said that "a like exemption is made by the laws of such other State . . . in favor of estates of citizens of this Commonwealth," there must be a law of that other State imposing a succession tax on all intangible property of deceased non-residents within its jurisdiction, with a special exemption from such tax in favor of estates of citizens of other States whose laws impose a like general tax with like special exemption. In effect this contention is that the statute should be construed as would an offer to sell, which must be accepted in exactly categorical terms without variation or shadow of change before it can become operative. We are of opinion that the statute should not be interpreted so narrowly, but should be given a more liberal construction. Its manifest purpose is to avoid duplication of taxation on the same succession by different States. Although this kind of double taxation violates no constitutional guaranty, the hardship of it has been recognized. Indeed, the inconsistency on the part of a sovereign State in taxing both according to the fact of power in one class of cases and in another

class of cases according to the fiction that the place of intangible personal property for taxation purposes follows the person of the owner, and hence that domicil of the owner settles the whole matter, has been pointed out. *Blackstone* v. *Miller*, 188 U. S. 189, at page 205. Moreover, the advantage of comity between the several States touching taxation laws so that a general system might prevail, harmonious in its principles and avoiding taxation of the same property in two jurisdictions has been suggested and is manifest. *Kidd* v. *Alabama*, 188 U. S. 730. Our statute should be interpreted in the light of the evil at which it was aimed and the purpose intended to be accomplished. The words "like exemption" in our statute are satisfied by the terms of the New York statute. Said Chief Justice Shaw in *Houghton* v. *Field*, 2 Cush. 141, 145: "'Like' does not necessarily mean the same in all particulars, but rather the contrary." "Like" in this connection does not imply identity but only similarity. It does not import coextensiveness in every detail, but only a resemblance in its salient features. See also *Hopkins* v. *Benson*, 21 Maine, 399; *United States* v. *Wallace*, 116 U. S. 398, 400. "Exemption" as applied to taxation signifies an immunity or freedom from that pecuniary burden. The New York statute covers the same general subject of taxation on successions as does our act. It is of "like character." It defines the classes of property to which it applies. It omits the particular kind of property here involved. That is as much an exemption in a broad sense as would be a comprehensive general phrase with certain denominated exceptions. The resulting freedom from taxation would be accomplished in one way as well as in the other. Although the New York law and our own are not exactly commensurate and coterminous in every respect as to property of a non-resident not made subject to the succession tax, yet as New York would not impose a succession tax on property exactly like that here in question and in New York in the same sense as this is in Massachusetts, if it belonged to a deceased resident of Massachusstts, we are of opinion that the descriptive words of our statute "like exemption" are satisfied. To the same effect is the well reasoned opinion in *State* v. *Davis*, 88 Kans. 849.

4. The shares of stock of Massachusetts corporations which belonged to the deceased are property within the jurisdiction of this Commonwealth and liable to be made subject to the suc-

cession tax. *Greves* v. *Shaw,* 173 Mass. 205. *Kennedy* v. *Hodges,* 215 Mass. 112, 114. But for the reasons already stated under paragraph three of this opinion, since they would not be taxed in New York if belonging to a deceased resident of Massachusetts, the estate of the deceased resident of that State is entitled to a like exemption here.

It follows that the decree of the Probate Court must be reversed and a new decree entered to the effect that the notes are not subject to the tax, and that the registered bond of the Commonwealth and the stock of the Massachusetts corporations are liable to the tax; but by reason of the special exemption shall be subject only to such portion of the tax imposed by our act as may be in excess of the succession tax imposed by the law of New York.

*So ordered.*