RICHARD H. DANA, executor, *vs.* TREASURER AND RECEIVER
GENERAL & another.

Middlesex.    October 20, 1916. — June 29, 1917.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Tax,* On legacies and successions.  *Trust,* Character of. transferable certificate
of ownership in partnership and trust property.  *Partnership.   Voluntary
Association.*

The general proposition is unquestioned that an equitable estate in land outside
the Commonwealth owned by one domiciled in the Commonwealth at the time
of his death is not subject to a legacy and succession tax here.

Where a trust was created to take over and carry on a factory and manufacturing
business theretofore owned and carried on by a New Hampshire corporation,
where the factory and tangible personal property held under the trust are in that
State and where the provisions of the declaration of trust are such as to create
a partnership and it is provided therein that upon the termination of the trust
all the partnership real estate shall be converted into personalty and that during
the existence of the partnership the property of the trust shall be represented by
transferable certificates, all the property of the trust must be regarded as having
been converted into personalty from the beginning to constitute one fund, and
the certificates representing the shares in the trust are personal property.
Consequently such shares held by a testator domiciled in Massachusetts at the
time of his death are subject to a legacy and succession tax here.

Where the property of an association called a ground rent trust was held by trustees
under a declaration of trust and consisted eighty-five per cent of real estate
situated outside of Massachusetts and fifteen per cent of personal property accu-
mulated since the creation of the trust by the operation of an annual sinking fund,
where the beneficial interest was divided into shares represented by transferable
certificates issued by the trustees and where the declaration of trust provided
that at a time fixed therein "or at such earlier time as three fourths in value
of the shareholders may . . . appoint" the trustees should terminate the trust
by selling all the property then held by them and distributing the proceeds
among the shareholders, the property of the trust including the realty must
be regarded as having been converted into personalty to constitute one fund,
so that the shares in the trust are personal property and their transfer by the
will of a testator domiciled in this Commonwealth is subject to a legacy and
succession tax here.

Where the property held under a deed of trust consisted only of two parcels of land,
one in the State of Minnesota and the other in the State of Michigan, where the
Minnesota land belonged one quarter each to a husband and his wife domiciled in
this Commonwealth and the remaining half to a third person, and the sole bene-
ficial owner of the Michigan land was the third person, where the wife domiciled
in this Commonwealth had a lien upon the beneficial interest of the third person
in both of the parcels to secure the payment by such third person to her of the
sum of about $9,000, where the declaration of trust contained no provision for

the issuing of certificates to represent the beneficial interests but there was a provision putting restrictions upon the assignment of such interests and it was provided that the real estate remaining unsold at the end of twenty years should be sold and the proceeds divided proportionally among the beneficial owners of the property, and where the wife mentioned above died testate before the expiration of the twenty years, making her husband the sole residuary devisee and legatee under her will, it was *held* that the wife's direct beneficial interest of a quarter share in the Minnesota land was real estate, the transfer of which by will was not subject to a legacy and succession tax in this Commonwealth, but that the wife's interest as beneficial pledgee, for about $9,000, of the third person's beneficial interest in the land both in Minnesota and Michigan was personal property, the passing of which by will was subject to such a tax.

A beneficial interest in land is not made personal property by the fact that it is assignable by a writing complying with the requirements of R. L. c. 127, § 3, without a conveyance by deed.

*Whether* the fact that the sole trustee under a deed of trust of real estate outside of Massachusetts is a resident of this Commonwealth, if it stood alone, would be sufficient to make the passing by will of a beneficial interest in such trust subject to a legacy and succession tax in this Commonwealth, it here was not necessary to decide.

BILL IN EQUITY, filed in the Probate Court for the county of Middlesex on August 1, 1916, by Richard H. Dana, as executor of the will of Edith L. Dana, for instructions as to whether the passing by will of certain alleged interests in real estate in other States was subject to a legacy and succession tax in this Commonwealth.

In the Probate Court the judge made a decree in favor of the Treasurer and Receiver General on all the matters in controversy, declaring that the passing by will of the following property was subject to a legacy and succession tax under St. 1909, c. 490, Part IV, § 1, as amended by St. 1912, c. 678, namely: the interest of the testatrix in the Duluth and Gladstone Real Estate Trust, in thirty preferred shares of the Amoskeag Manufacturing Company, in forty-five common shares of the Amoskeag Manufacturing Company and in one hundred and thirty shares of the Boston Ground Rent Trust. The character of these securities as shown by the several declarations of trust is described in the opinion. Richard H. Dana, individually, as the sole devisee and legatee under the will, appealed.

The appeal came on to be heard before *Crosby*, J., who at the request of the parties reserved it for determination by the full court.

*E. B. Church,* for the plaintiff, stated the case.

*H. R. Bailey,* for the defendant Richard Dana, individually.

*W. H. Hitchcock,* Assistant Attorney General, for the Treasurer and Receiver General.

LORING, J. Edith L. Dana died domiciled in Massachusetts and possessed of seventy-five shares in the Amoskeag Manufacturing Company, one hundred and thirty shares in the Boston Ground Rent Trust, and an "interest under the Duluth & Gladstone Real Estate Trust." A succession tax was imposed upon each of these pieces of property. Mrs. Dana's husband, the sole residuary devisee and legatee under her will, made the claim that the three pieces of property in question or "so much of" them as consists of an equitable interest in real estate situate outside the territorial limits of the State were not the subject of a succession tax in this Commonwealth. Thereupon the executor brought a bill for instructions in the Probate Court making the Treasurer and Receiver General and Mrs. Dana's husband the parties defendant. The Probate Court decided that the property was subject to a succession tax. From that decree Mr. Dana took the appeal which is now before us.

1. Mr. Dana's contention is that an equitable estate in land lying outside of the Commonwealth although owned by one domiciled in it at the date of his death is not subject to a succession duty here. There is no question of the correctness of that proposition. See, for example, *Attorney General* v. *Barney,* 211 Mass. 134; *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600. The question which we have to decide is how far that principle of law is applicable in this case.

2. We take up first Mrs. Dana's shares in the Amoskeag Manufacturing Company. The Amoskeag Manufacturing Company was the name by which the trustees under a declaration of trust were to be known in their collective capacity as matter of convenience in the practical conduct of the business carried on by them under that declaration of trust. The trust was created to take over the factory and manufacturing business theretofore owned and carried on by a New Hampshire corporation known as the Amoskeag Manufacturing Company. The factory in question and the tangible personal property held under the trust are situate in the State of New Hampshire. "The beneficial

interest in this trust" is divided into shares. These shares are represented by transferable certificates. It is provided in the declaration of trust that the death of a shareholder shall not operate to determine the trust nor entitle the legal representatives of a deceased shareholder to an accounting but that the executors, administrators and assigns of the deceased shareholder shall succeed to the rights of the decedent and be entitled to a certificate in their own names upon surrender of the old certificate. It is also provided therein that the ownership of shares thereunder shall not entitle the shareholder to any title in or to the trust property or right to call for partition or division of 'the same, or for an accounting. The declaration of trust provides for meetings of the shareholders, and that at these meetings the shareholders shall have power to elect the trustees and to alter and amend the declaration of trust. It is further provided therein that on the expiration of twenty-one years after the death of certain persons therein named the trustees shall wind up the affairs of the trust, liquidate its assets and distribute the same among the holders of shares. There is a provision in it whereby the time for winding up its affairs can be shortened or extended by the shareholders at shareholders' meetings. In addition there is a provision which authorizes the trustees in case they elect so to do "to distribute shares, securities or obligations instead of cash" in case of the liquidation of the assets of the trust. But there is no provision authorizing them to distribute among the shareholders the real property of the trust.

This declaration of trust created a partnership. Upon that point *Phillips* v. *Blatchford,* 137 Mass. 510, is decisive. In addition the trust is well within the distinction between trusts which create partnerships and trusts which are pure trusts, stated at length in *Williams* v. *Milton,* 215 Mass. 1, where the cases are collected. For the last case in which this distinction was applied and the trust held 'to have created a partnership see *Frost* v. *Thompson,* 219 Mass. 360.

It is alleged in the petition and admitted by the answer that at the date of Mrs. Dana's death over seventy-five per cent of the property of the Amoskeag Manufacturing Company consisted of real estate situate in New Hampshire and twenty-three per cent of it "consisted of tangible personal property in New Hampshire

in the shape of raw material and goods finished and in process of manufacture." The other two per cent seems to have been made up of intangible personalty.

It is the contention of the appellant that a person dying possessed of one of the shares of this trust dies possessed of real estate to the extent to which the assets of the trust at the time of the decedent's death consist of real estate and of personal property to the extent to which those assets consist of personal property at that time. And we see no escape from that result if the rule as to partnership real estate which obtains in this Commonwealth in case of ordinary partnerships applies to a partnership like the Amoskeag Manufacturing Company.

In case of an ordinary partnership there is no practical difficulty in carrying out the Massachusetts rule as to partnership real estate, namely, that so far as necessary to pay the debts of the firm partnership real estate is personalty, but that for all other purposes it is real property. In an ordinary case a partnership comes to an end upon the death of each partner and by reason of that fact the partnership affairs have to be wound up at that time. In such a case there is no practical difficulty in winding up the estate of the decedent partner under the Massachusetts rule as to partnership real estate. But the same rule applied to partnership real estate in a partnership like the Amoskeag Manufacturing Company partnership would raise great practical difficulties. Take the case of a person who dies owning one share in the Amoskeag Manufacturing Company partnership. If the Massachusetts rule as to partnership real estate applies that one share (as we have said already) is real estate to an amount determined by ascertaining the proportion of the real estate owned by the partnership to all its assets and is personal property to the amount determined by ascertaining the proportion between its personal property and those assets. If that be so that one share must be dealt with accordingly in winding up the estate of the decedent; that is to say, so far as that one share is real estate it cannot be sold without a license from the Probate Court to sell it as real estate although so far as it is personal property it can be sold by the executor or administrator by virtue of his office.

*Wilcox* v. *Wilcox*, 13 Allen, 252, is the case in which the rule as to partnership real estate in case of ordinary partnerships was

finally established in this Commonwealth. It was pointed out in that case, at page 254, that: "Upon examination of the earlier English cases, from which this doctrine [the English doctrine that in case of partnership real estate there is an out and out conversion of it into personal property for all purposes] has grown, it will be found that, in several of them, there was an express agreement between the copartners, the specific performance of which would of itself convert the real estate into personal assets. The conversion was worked, therefore, not merely from the relation of copartnership, but on the ground that the deceased partner had, by the very contract under which he became joint owner, stamped upon the realty the character and incidents of personalty." From an examination of the authorities before the court in *Wilcox* v. *Wilcox*, it is plain that one of the cases thus referred to was *Ripley* v. *Waterworth*, 7 Ves. 425. The agreement in *Ripley* v. *Waterworth*, was an agreement that on the conclusion of the partnership all the partnership property should be sold and reduced to cash. That is to say the agreement, which it was held in at least one of the early cases referred to in *Wilcox* v. *Wilcox* worked an out and out conversion, was an agreement of the same kind as the agreement in the case of Amoskeag Manufacturing Company partnership. Since the decision in *Ripley* v. *Waterworth* it has been held and is now established in England (for reasons based on practical considerations) that partnership realty is converted out and out to personalty in the absence of an agreement and that this conversion dates from the beginning of the partnership. For this reason no late cases bearing on the case at bar are to be found there. It was not necessary in *Ripley* v. *Waterworth* to decide what the time was from which the real estate was converted into personalty by force of this agreement. That point however is covered (so far as the case now before us is concerned) by the decision in *Fletcher* v. *Ashburner*, 1 Bro. C. C. 497. In that case a testator devised his real and personal property to trustees to permit his widow to enjoy the residue during her life and after her decease to sell the same and distribute the proceeds between his son and his daughter or in case his widow should marry again then and in that case to sell all the estate and effects given her for life and to divide the proceeds between his wife, his son and his daughter share and share alike; and in case either the son or the

daughter should die before his or her legacy should become due, the share or legacy of him or her so dying was to go to the survivor. The son survived the daughter. Both died during the lifetime of the widow. Upon the death of the widow it was held that the property went to the next of kin of the son and not to his heirs. This conclusion was reached on the ground that the testator had in effect provided that his real and personal property should be one fund from the beginning. It was decided in terms in *Fletcher* v. *Ashburner,* that the gift to the son and daughter vested at the date of the death of the testator subject to each being divested by the gift to the survivor in case of the death of the legatee in question before the legacy came into possession. That is to say it was held that the fund was personal property at the date of the death of the son which took place during the life of the widow and so before the sale was to take place which in fact made the real property personalty. And it is plain that on principle this is correct. Where real property is held to be converted into personalty because with personal property it is made one fund and all the fund is ultimately to be personalty, it cannot be one fund from the beginning unless the conversion takes place from the beginning. In the declaration of trust creating the Amoskeag Manufacturing Company partnership, it is provided that upon the termination of the trust all the partnership real estate shall be converted into personalty and it is provided that throughout the life of the partnership the beneficial interest in it shall be represented by transferable certificates: in this way it is provided that the property of the trust partnership shall constitute one fund. It follows that the conversion into personalty must be taken to date from the beginning to make the fund one fund from the beginning.

It follows that the shares of the Amoskeag Manufacturing Company partnership owned by Mrs. Dana at the time of her death were personal property and passed to her executor by virtue of the laws of this Commonwealth because of her domicil in this State at that time. Since they were personal property a succession tax was rightly imposed upon them.

The appellant contends that this conclusion is in conflict with the decisions of this court in *Kinney* v. *Treasurer & Receiver General,* 207 Mass. 368, so far as that non-resident decedent's interest in so much of the Cambridge Real Estate Associates as

was personal property was concerned, and with the decision in
*Peabody* v. *Treasurer & Receiver General,* 215 Mass. 129.

In *Kinney* v. *Treasurer & Receiver General,* a succession tax
was levied upon the interest of a non-resident in a mortgage on
real estate lying within the Commonwealth securing a note owned
by the non-resident and also upon his interest in the Cambridge
Real Estate Associates represented by a deposit book of the owner
pledged with the non-resident decedent to secure the owner's
note. A succession tax upon the interest of the decedent in
the mortgage of real estate situate within the Commonwealth
was supported on the ground that a mortgage in Massachusetts
conveys the legal title to the mortgagee and for that reason the
mortgagee had an interest in the real estate within the Common-
wealth. The succession tax imposed upon the interest of the
decedent in the Cambridge Real Estate Associates (which he
got by being the pledgee of the deposit book of the owner) was
supported on the same ground. It was assumed in the opinion
in that case that all the property of the Cambridge Real Estate
Associates was real estate. It appears from the report of that
case, however, that although the great bulk of it was real estate
yet the associates in fact owned two shares in the Calumet and
Hecla Mining Company. And it is on the decision made in *Kin-
ney* v. *Treasurer & Receiver General* so far as the non-resident
decedent's interest in those two shares of mining stock is con-
cerned that the appellant now relies. The existence of these
two shares of personal property was not referred to in the opinion.
The opinion proceeded on the ground that a hypothecation of an
equitable interest in real estate stood on the same footing as a
legal mortgage of real estate. That is all that the court under-
took to decide in that case and all that that case can be taken to
stand for as an authority. So far as the non-resident decedent's
interest in the two shares of mining stock (the existence of which
was ignored by the court) was concerned the case was in fact
rightly decided because it appears from the record in that case
that the trustees of the Cambridge Real Estate Associates all
of them were residents of Massachusetts and that all its prop-
erty real and personal was in Massachusetts. That being so a
succession tax was rightly imposed upon the interest of the non-
resident pledgee of the deposit book so far as the pledge of the de-

posit book was a pledge of personalty under the decision made in *Bliss* v. *Bliss,* 221 Mass. 201, as to registered bonds of the Commonwealth held by non-residents. The decision in *Peabody* v. *Treasurer & Receiver General,* 215 Mass. 129, may well rest upon the same ground. It is to be noted that in *Kennedy* v. *Hodges,* 215 Mass. 112, 114, this is put forward (in effect) as the ground on which these decisions might well be taken to rest.

The Attorney General has placed much reliance upon the decision in *Kennedy* v. *Hodges, ubi supra,* so far as the decision in that case concerned certificates for shares in the Western Real Estate Trust. The character of the property owned by that Trust was not stated in the record. It was alleged in the bill and admitted in the answer that the shares were personal property.

We are of opinion that the succession tax imposed upon Mrs. Dana's shares in the Amoskeag Manufacturing Company was valid.

3. We are of opinion that the same conclusion must be reached with respect to the succession tax imposed upon the one hundred and thirty shares in the Boston Ground Rent Trust held by Mrs. Dana at the date of her death.

At the date of Mrs. Dana's death eighty-five per cent of the property of that trust consisted of real estate situated outside of Massachusetts. On the allegations contained in the petition and admitted by the answer it must be taken that the balance or fifteen per cent consisted of personal property. The beneficial interest in this trust was divided into shares and for these shares transferable certificates were issued by the trustees. The declaration of trust provided for meetings of the shareholders at which they might instruct the trustees in any manner not inconsistent with the declaration of trust and at which the declaration of trust might be altered or added to accordingly. It further provided that at a time fixed in the trust "or at such earlier time as three fourths in value of the shareholders may . . . appoint" the trustees should terminate the trust by selling all property then held by them and dividing the proceeds among the shareholders. The principal difference between the Ground Rent Trust and the Amoskeag Manufacturing Company is that the personal property (amounting to fifteen per cent of all the property of the trust at Mrs. Dana's death) did not come into existence until after the creation of the

trust. It came into existence by virtue of a clause in the declaration of trust providing that the trustees might set aside not more than ten per cent of the annual income for a contingent fund or sinking fund or both. It appears therefore that the property of the Ground Rent Trust was ultimately to be reduced into personal property and that the trust property (in part real and in part personal property from the time when the sinking fund came into existence) was to be one. Under these circumstances we are of opinion that the same conclusion must be reached in this trust as in the Amoskeag Manufacturing Company. It follows that the succession tax imposed on the one hundred and thirty shares in the Boston Ground Rent Trust was properly imposed upon them as personal property held by a person domiciled in this Commonwealth at the date of her death.

The conclusion which we have reached as to Mrs. Dana's interest in the Boston Ground Rent Trust seems to be in conflict with the conclusion reached in *Bartlett* v. *Gill*, 221 Fed. Rep. 476, as to the character of shares in City Associates, Commonwealth Land Trust, Boston Real Estate Trust, Bedford Building Association and the Municipal Real Estate Trust. It does not appear affirmatively that personal property as well as real estate was held by the trustees of those trusts. But it was assumed in *Bartlett* v. *Gill*, that that might have been the case. We have examined the authorities cited in *Bartlett* v. *Gill* and find nothing in them inconsistent with the conclusion which we have reached; so far as the decision in that case is in conflict with the conclusion here reached we are of opinion after giving due consideration to it that it ought not to be followed. *Beal* v. *Carpenter*, 235 Fed. Rep. 273, is the only other case which has come to our attention in which these matters are discussed.

4. The "interest" or, speaking more accurately, the interests of the decedent in the Duluth and Gladstone Real Estate Trust are quite different.

Without going into details we are of opinion that by the true construction of that trust the decedent had interests in it of two kinds. The property of that trust consisted of real estate and real estate alone. The persons interested in the trust were Mrs. Dana (the decedent), Mr. Dana (her husband) and a Mr. Hale. The real estate consisted of one parcel of land in Duluth

in the State of Minnesota and one parcel of land in Gladstone in the State of Michigan. We are of opinion that by the true construction of the declaration of trust the decedent and her husband each owned one undivided equitable quarter interest in the Duluth real estate and that Mr. Hale owned the other two quarters undivided equitable interest in that part of the trust realty (that is in the Duluth land) subject to a lien on his (Mr. Hale's) two quarters held by the decedent to secure the payment to her of the sum of $9,033. The beneficial interest in the Gladstone real estate was all owned by Mr. Hale, but it was subject (1) to a lien for the payment to Mr. Dana of $2,500 and (2) to a lien in favor of the decedent for payment of the same $9,033 for which she had a lien upon Mr. Hale's undivided beneficial interest in the land in Duluth.

There was no provision in the declaration of trust for meetings of the owners of the beneficial interests in this trust property. The owners of the beneficial interest had a common interest but they were not associated together in any way. As we have already said there was no personal property held by the trustee and there was no provision for the issue of certificates to represent the shares to those who held the beneficial interests in the trust. There was a provision putting restrictions upon the assignment of their interests by the owners of the beneficial property * but that is the only provision of the declaration of trust in that connection. It was provided that the real estate remaining unsold at the end of twenty years should be sold and the proceeds divided as stated above. As there was a provision directing that all real estate should be sold at the end of the trust there was a provision for a conversion of the real estate into personal property. But in such a case no conversion takes place until the date when the sale is directed to be made and at Mrs. Dana's death her interest as a holder of one undivided fourth of the land in Duluth

---

\* The provision referred to was as follows: "No assignment of a subscriber's interest shall be made of less than one half his original interest and not to more than one person, though more than one person may take under a will or as distributee. Any assignment to be valid must be in duplicate, each countersigned by the trustee and one preserved by him. On any new assignment of the same interest the old one must be delivered to the trustee to be cancelled to the amount of the interest assigned."

was an interest in real estate outside the Commonwealth and so not subject to a tax in Massachusetts.   See, for example, *Attorney General* v. *Barney, ubi supra,* and *Walker* v. *Treasurer & Receiver General, ubi supra.*

But Mrs. Dana's interest created by this declaration of trust, which secured to her the payment of $9,033 by a pledge of Mr. Hale's beneficial interest to the extent of one half of the land in Duluth and his beneficial interest in the whole of the land in Gladstone, was subject to a succession tax in Massachusetts. This interest was of the same kind as the interest of the holder of a note secured by mortgage on land lying outside the Commonwealth.   In both cases the debt is personal property; it passes by succession to her executor by force of the laws of Massachusetts and so is subject to a succession tax here.

The Attorney General has contended that the undivided fourth interest of Mrs. Dana is personal property because it is impliedly provided that it shall pass by assignment: The exact provisions of the declaration of trust are given below.   And he has made the same contention with respect to Mrs. Dana's interests in Amoskeag Manufacturing Company and in the Boston Ground Rent Trust.   This contention is not of consequence in connection with the Amoskeag Manufacturing Company and the Boston Ground Rent Trust because we have reached the conclusion that Mrs. Dana's interest in those trusts was personal property for other reasons.   The argument of the Attorney General is that a beneficial interest in real property can be conveyed by deed only. In other words that so far as the conveyance or transfer of the equitable ownership in real property is concerned the same rule applies as that which governs the conveyance of a legal title to land, and since it is provided (at least impliedly) that these equitable interests can be assigned without a deed it is provided that they are personalty.   But although support for that contention is to be found in *Bartlett* v. *Gill, ubi supra,* at page 485, it is without foundation.   Conveyances of legal estates are the outcome of feudal tenures and are founded on the doctrine of feoffment with livery of seisin.   The transfer of an equitable interest in real estate has nothing to do with feudal tenures and is not dependent on the doctrine of feoffment with livery of seisin.   The only provision of law regulating the transfer of an equitable estate in land

is § 3 of the statute of frauds (St. 29 Car. II, c. 3) re-enacted at the present time in this Commonwealth in R. L. c. 127, § 3, and that provision is that the assignment must be in writing. In other words the method of transfer adopted (that is, by an assignment in writing) is as applicable to a transfer of an equitable estate in land as it is to a transfer of personal property.

Another contention of the Attorney General is that Mrs. Dana's interest as owner of one undivided fourth part of the Duluth real estate is subject to a succession tax in this Commonwealth because the sole trustee was and is a resident of this Commonwealth, and he contends for that reason that a succession tax upon that interest comes within the decision made in *Bliss* v. *Bliss, ubi supra,* as to registered bonds of the Commonwealth. We do not need to decide whether that contention would have been correct had nothing more appeared in the case. But more does appear: it is alleged in the petition that: "Said interest [Mrs. Dana's] under the Duluth and Gladstone Real Estate Trust consists of an equitable interest in real estate situated entirely outside of Massachusetts in the States of Minnesota and Michigan. It is the law of each of said States that the trust is to be enforced as to the real estate in each of those States by the courts in those States respectively without recourse to the laws or the courts of Massachusetts." This allegation was admitted by the Attorney General in his answer. Whether the statutes of Minnesota and Michigan do or do not provide for an enforcement of a trust with respect to real estate situate within their territorial limits when the trustee resides out of the State are questions of fact. The counsel for Mr. Dana has contended that the allegations set forth above are allegations of the existence of such statutes and we are of opinion that in this contention he is right. It follows that on the record it must be taken to be the fact that without resorting to the courts of this Commonwealth Mrs. Dana and her successor in title could have asserted their rights as owners of one undivided fourth part in the beneficial property in the Duluth real estate, and this interest does not come within the decision in *Bliss* v. *Bliss, ubi supra.*

It may be noted in passing that the case at bar in this connection is not like *Kinney* v. *Treasurer & Receiver General, ubi supra,* and *Peabody* v. *Treasurer & Receiver General, ubi supra.* In those

cases all the trust property real and personal as well as the trustees were within the Commonwealth of Massachusetts.

It must be taken on the record that the succession duty imposed upon Mrs. Dana's "interest under the Duluth and Gladstone Real Estate Trust" was imposed upon all the interests which she had under that trust. That is to say both upon her interest as the holder of a debt secured by pledge of Mr. Hale's equitable interest under the trust and as holder of an undivided equitable fee in that portion of the trust property which consisted of land in Duluth. So far as the latter is concerned the property was not subject to a succession tax. To that extent the decree of the Probate Court was wrong; so far as the former is concerned it is right.

It does not appear whether the succession tax imposed upon Mrs. Dana's "interest under the Duluth and Gladstone Real Estate Trust" was imposed on her interest by way of a lien for the payment of the $9,033 or upon her interest as owner of an undivided quarter beneficial fee in the land in Duluth or on both. It follows that the decree of the Probate Court was wrong so far as it declared that the succession tax imposed upon Mrs. Dana's "interest under the Duluth and Gladstone Real Estate Trust" was valid.

It is alleged in the bill that the rate of the succession tax depends upon the taxes imposed upon all the three pieces of property being valid. It follows that the whole decree must be reversed and the case stand for hearing before a single justice. It is

*So ordered.*