EZRA H. BAKER & another, executors, *vs.* COMMISSIONER OF
CORPORATIONS AND TAXATION.

Suffolk.    January 14, 1925. — June 27, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Tax,* Succession. *Trust,* Construction, Real estate trust. *Equitable
Conversion. Real or Personal Property. Words,* "Trust fund."

A voluntary, unincorporated association was founded by an agreement of
trust and a deed which conveyed to the trustee real estate in Boston
subject to provisions which constituted a pure trust as distinguished
from a partnership, and the instrument so provided.  The trusteeship
was self-perpetuating.  Certificates representing shares were issued for
a beneficial interest in the property.  The trustees were given power
to apply rents and profits and "not over five percent thereof per
annum  to the creation of a sinking fund for repairs and the like,"
the balance to be divided semiannually or oftener among the certificate
holders.  The certificates entitled the owner to "a proportional share of
all dividends, but shall not give any right in the land represented" nor
right "to call for partition" or for distribution.  By a fifth clause of
the trust agreement, at the expiration of twenty years after the death
of certain named persons, the trustees were directed to "terminate
this trust by dividing the Trust Fund or the proceeds thereof" among
the *cestuis que trust* and were given the privilege, but specifically were
under no obligation, with the consent of three fourths in interest of the
*cestuis que trust,* to "alter or add to this declaration, or terminate this
trust, and if it seems to them judicious so to do, they may, with like
consent, convey" the trust fund to new or other trustees or to a corpora-
tion.  Executors of the will of a nonresident of Massachusetts, who
had owned shares of the trust at the time of his death, petitioned under
G. L. c. 65, §§ 27, 30, for repayment of a tax assessed upon the shares
under G. L. c. 65, § 1, as amended by St. 1922, c. 403, § 1.  *Held,* that

(1) It did not appear that the trustees in fact had a substantial
accumulation of personal property in hand which was treated under
the trust as constituting with the real estate "one fund," and therefore
the decisions in *Dana* v. *Treasurer & Receiver General,* 227 Mass. 562,
and in *Priestly* v. *Treasurer & Receiver General,* 230 Mass. 452, were
distinguishable;

(2) Article fifth of the trust instrument imposed upon the trustees
no positive duty to make sale of the real estate for purposes of dis-
tribution until the termination of the trust by its own limitation, if not
voluntarily brought to an end at an earlier time;

(3) The time for conversion of real estate into personal property
being set by the parties at a considerable time in the future, there was
no reason for an application of the doctrine of equitable conversion as
of the date of the agreement;

(4) The provision in the trust instrument that the shares shall be "personal property," whatever might have been its effect in showing the intent of the parties, could not rightly be construed as converting land in the hands of the trustees into personal property in their hands;

(5) The interest of the decedent in the trust constituted an equitable interest in the real estate owned by the trustees and was taxable under G. L. c. 65, § 1, as amended by St. 1922, c. 403, § 1.

PETITION, filed in the Probate Court for the county of Suffolk under G. L. c. 65, §§ 27, 30, on June 25, 1924, by executors of the will of Esther Hinckley Baker, late of Providence in the State of Rhode Island, for the abatement of a legacy and inheritance tax assessed to the petitioners under G. L. c. 65, § 1; St. 1922, c. 403, § 1.

The petition was heard in the Probate Court by *Dolan*, J., upon an agreed statement of facts, and by his order a decree was entered directing the repayment sought. The respondent appealed.

*M. F. Weston*, Assistant Attorney General, for the respondent.

*T. Parker*, for the petitioners.

RUGG, C.J. This is a petition under G. L. c. 65, §§ 27, 30, to recover a legacy and succession tax assessed and collected with respect to shares in the Baker Building Associates owned by the testatrix of the plaintiffs. She died a resident of Rhode Island in May, 1923. The Baker Building Associates is a voluntary unincorporated association duly organized under the laws of this Commonwealth and established by deed and agreement of trust dated September 9, 1919, and having its usual place of business at Boston. The property conveyed by the deed was real estate in Boston, which remained under the trust and constituted its corpus on the date of the death of the testatrix. It was contended by the petitioners and conceded by the respondent that the deed, correctly construed as to its substance, created a pure trust as distinguished from a partnership. *Williams* v. *Milton*, 215 Mass. 1, and cases there reviewed. *Flint* v. *Codman*, 247 Mass. 463, 469. *Crocker* v. *Malley*, 249 U. S. 223. There was also an express provision in the trust instrument to that effect. The trustees were required to hold and manage the property with "all the powers of absolute

owners" for the benefit of the shareholders, as *cestuis que trust,* with specific mention of powers among others to erect buildings and to lease, exchange, mortgage or sell for cash or otherwise, and to acquire adjoining land.  Other salient provisions of the trust are that neither the trustees nor the *cestuis que trust* shall be personally liable with respect to the trust, but that for all debts the trustees shall be liable as such to the extent of the trust fund only.  Any vacancy in the trustees shall be filled by appointment by the remaining trustees or trustee with the assent in writing of a majority of the certificate holders or, if no such appointment be made within ninety days, application may be made to a court by any party in interest.  The trustees may apply rents and profits and proceeds of sales in whole or in part to improvements and "not over five percent thereof per annum to the creation of a sinking fund for repairs and the like," the balance to be divided semiannually or oftener among the certificate holders.  The beneficial interest in the property is represented by one hundred shares, which "shall be personal property," of the nominal par value of $1,000 each, "evidenced by certificates" in a prescribed form signed by the trustees, transferable only upon the books of the trustees upon surrender of the old certificate.  The certificates entitle the owner to "a proportional share of all dividends, but shall not give any right in the land represented" nor right "to call for partition" or for distribution.  It is provided in Article Fifth of the trust that upon the expiration of twenty years after the death of several named persons the trustees shall "terminate this trust by dividing the Trust Fund or the proceeds thereof" among the *cestuis que trust,* and that the trustees may, with the consent of three fourths in interest of the *cestuis que trust,* "alter or add to this declaration, or terminate this trust, and if it seems to them judicious so to do, they may, with like consent, convey" the trust fund to new or other trustees or to a corporation, provided that they shall be under no obligation to terminate the trust or convey the trust fund "except as hereinbefore provided."

The question to be decided is whether the interest of the testatrix as a certificate holder under this trust was subject

to an excise tax under G. L. c. 65, § 1, as amended by St. 1922, c. 403, § 1. The crucial statutory words are " . . . all real estate within the Commonwealth or any interest therein . . . belonging to persons who are not inhabitants of the Commonwealth, which shall pass by will . . . to any person, absolutely or in trust . . . shall be subject to a tax . . ." with exceptions not here material.

These shares constitute property within the Commonwealth. Under earlier legacy and succession tax laws they would have been taxable even though owned by nonresident decedents. *Kinney* v. *Treasurer & Receiver General*, 207 Mass. 368, 371. *Kennedy* v. *Hodges*, 215 Mass. 112, 114. The present governing statute is different in its wording from that under consideration in those cases. The question here presented is whether the property right of the testatrix as a certificate holder under the trust was "real estate" or "any interest therein" within this Commonwealth. Since the property right of a certificate holder in a pure trust like the one at bar can hardly be treated strictly as real estate, the question to be decided is narrowed to the point whether such property right is "any interest" in real estate.

The petitioners contend that the real estate is to be treated as personal property under the doctrine of equitable conversion, because the trustees are required to convert all the trust into personal property for the purpose of final distribution at the termination of the trust. They invoke the general rule that a conversion from real estate to personalty takes place, although in fact unchanged in form, when there is plain language or a necessary implication in the instrument creating the trust whereby a duty is imposed upon the trustees to sell the land for money for distribution or other trust purpose, and that such conversion commonly takes place at the time the instrument becomes operative. The doctrine of equitable conversion is well established. It is founded upon the maxim that equity regards that as done which ought to be done. Resort is had to it in order to work out the intent of the parties and accomplish a result which ought to be accomplished on principles of fair dealing. Real estate is regarded as converted into personalty, or the reverse,

from the time when it ought to have been so converted. As a practical working rule with respect to wills, it has come to be recognized that when conversion of real into personal estate imperatively is required by the maker of the will, the law will regard it as converted "at the death of the testator, and he who takes under the will takes it with the character which the will has impressed upon it." *Hammond* v. *Putnam*, 110 Mass. 232. *Thissell* v. *Schillinger*, 186 Mass. 180, 185. *Gray* v. *Whittemore*, 192 Mass. 367, 384. *Rockland-Rockport Lime Co.* v. *Leary*, 203 N. Y. 469, 480. The doctrine of conversion is not a hard and fast rule. It was said by Chief Justice Knowlton in *May* v. *Brewster*, 187 Mass. 524, at page 530, "Under the decisions in *Hammond* v. *Putnam*, 110 Mass. 232, and *Perkins* v. *Coughlan*, 148 Mass. 30, it may be that, for some purposes, this real estate was constructively converted into personal property, as of the time of the death of the testator. In fact it remained in the form of real estate, and for the purposes of this case it must be dealt with as real estate."

The time when the equitable conversion takes place depends upon the terms of the particular instrument under consideration. The intent there expressed must be effectuated. When a definite time is specified in an agreement between parties for the sale of real estate and its conversion into personalty, the conversion commonly does not take place until that specified time has arrived. The reason is that, until that time has come, there ought not to be any conversion under the agreement. Until that time has come the equitable maxim, to which allusion has already been made, has no room for operation because nothing ought to be done which equity can regard as done. The parties have fixed their own time for the conversion to take place. There is no sound reason for the law to accelerate the arrival of that time. *Underwood* v. *Curtis*, 127 N. Y. 523, 533. *Elliott* v. *Loftin*, 160 N. C. 361. *DeWolf* v. *Lawson*, 61 Wis. 469, 477. *Massey* v. *Modawell*, 73 Ala. 421, 425. *Bank of Ukiah* v. *Rice*, 143 Cal. 265, 270. *Keller* v. *Harper*, 64 Md. 74, 82. *Comer* v. *Light*, 175 Ind. 367, 374. Lord Cranworth in *Ferrie* v. *Atherton*, 28 Eng. Law & Eq. 1, 7.

The doctrine of equitable conversion has been applied with respect to trust instruments more or less similar to the one under which the Baker Building Associates was established. The trust instrument establishing the Amoskeag Manufacturing Company, under consideration in *Dana* v. *Treasurer & Receiver General*, 227 Mass. 562, was held to create a partnership and not a pure trust, as does the present trust instrument. But the property of that trust consisted of both real and personal property devoted to carrying on the business of manufacturing, and the question of equitable conversion there was discussed and held applicable. It was said at page 568, "Where real property is held to be converted into personalty because with personal property it is made one fund and all the fund is ultimately to be personalty, it cannot be one fund from the beginning unless the conversion takes place from the beginning." The doctrine of equitable conversion as thus stated was held applicable in the *Dana* case to the Amoskeag Manufacturing Company trust and to the Boston Ground Rent Trust because those funds, either originally or at the time in question, consisted of both real and personal estate and were to be converted into personalty for distribution when those trusts came to an end. That principle was held applicable in *Priestley* v. *Treasurer & Receiver General*, 230 Mass. 452, to the Homans Real Estate Trust and the Boston Real Estate Trust, each of which trusts, as shown by the original papers, consisted of both real and personal property administered as one fund and imperatively required to be converted at the end of the trust into personalty for purposes of distribution. In all these instances the conversion was held to have occurred at the beginning for the reasons already quoted from the *Dana* opinion. Allusion was made in the opinion in the *Dana* case to the practical difficulties in the way of the operation of any other theory of law than that of equitable conversion, and doubtless considerations based upon experience in the actual administration of affairs had something to do with the conclusion there reached.

If it appeared in the case at bar that the trustees in fact had a substantial accumulation of personal property in hand

which was treated under the trust as constituting with the real estate "one fund," then doubtless it would be governed by the *Dana* and *Priestley* cases. The trust would be held to be one fund and be treated as personal property from the beginning, because of necessity all must be converted into personalty from the beginning in order to be one fund.

The trust in the case at bar as originally established consisted entirely of real estate. It was established by a deed conveying real estate alone upon specified trusts. There is nothing in this record to indicate that there was in fact any personal property in the corpus of the trust. The trust instrument makes provision respecting whatever personal property may come into the hands of the trustees. The trustees have power to apply a small percentage of the income from the real estate for a sinking fund for "repairs and the like." These provisions seemingly are ancillary to the main and dominant object of administering a real estate trust. For aught that appears, the only personal property ever coming to the hands of the trustees was received from the real estate and all may have been divided periodically among the certificate holders. In the absence of anything showing the contrary, that would be the natural inference. It cannot be presumed that there are accumulations of personal property in the hands of the trustees. If any of the real estate originally constituting a part of the trust has been converted into personal property and is undistributed, that fact nowhere appears on this record.

The sole obligation resting upon the trustees as to division of the corpus of the trust is set forth in Article Fifth, the material parts of which have already been quoted. That obligation, so far as imperative, arises only when the trust shall be terminated at the expiration of twenty years after the death of the last survivor of the nine named persons. The termination of the trust at an earlier time is optional with the trustees.

The interpretation of Article Fifth is not entirely free from doubt. The one hundred shares in the trust were held at the outset, in varying numbers of shares, by two different individuals, the executors of one estate, and trustees repre-

senting seven different groups of beneficiaries, being ten different interests in all. All this appears from the trust instrument. It does not appear whether there have been changes in these holdings. This would under ordinary circumstances be a considerable number of persons among whom to divide, at the termination of the trust, awkward fractional shares of real estate as tenants in common. The trustees are required to terminate the trust "by dividing the Trust Fund, or the proceeds thereof," among the *cestuis que trust*. The power to divide a fund carries something of an implication that it is to be first transmuted into a form susceptible of reasonable division according to the customs of mankind. It has been held to import the power to sell and convert into money. *McLaughlin* v. *Greene*, 198 Mass. 153. *May* v. *Brewster*, 187 Mass. 524. The words "Trust Fund" also tend to indicate personal rather than real estate. With some hesitation we reach the conclusion that Article Fifth of the trust instrument imposes upon the trustees the positive duty to make sale of the real estate for purposes of distribution at the termination of the trust by its own limitation, if not voluntarily brought to an end at an earlier time.

Thus interpreting Article Fifth, the sale and conversion of the corpus of the estate into quick assets for distribution will not take place as an imperative mandate of the trust until the happening of a certain event at a considerable time in the future. The doctrine of equitable conversion of real estate into personal property, as of the date of the agreement, does not operate under the facts here disclosed. It would be a perversion of the doctrine of equitable conversion, having the foundation and purpose already stated, to apply it to a real estate trust like the present one. Here there is no imperative requirement for the sale of the land and its change into a money equivalent earlier than twenty years after the death of certain named persons. In all human probability that time will not arrive for many more than twenty years and well may continue for a period of fourscore or more years, provided the named persons, with the death of the last of whom the final twenty years begins to run, are young enough and sufficiently robust. To accelerate the

time for conversion from that remote future to the present is quite outside the proper bounds of the doctrine of equitable conversion. The "ought" on which the doctrine rests has not yet come into being. *Dana* v. *Treasurer & Receiver General*, 227 Mass. 562, 572.

The provision in the trust instrument that the shares shall be "personal property," whatever may be its effect in showing the intent of the parties, cannot rightly be construed as converting land in the hands of trustees into personal property in their hands.

It follows that there was no equitable conversion of the corpus of this trust from real to personal property at the time of the death of the testatrix.

The question remains as to the nature of the interest of the testatrix as a certificate holder in a trust consisting wholly of real estate. It is plain that under our decisions it constitutes an equitable interest in land. *Kinney* v. *Treasurer & Receiver General*, 207 Mass. 368, 371. *Peabody* v. *Treasurer & Receiver General*, 215 Mass. 129, 131, and cases there collected. The interest of a *cestui que trust* in a real estate trust is rightly described as equitable. The statute imposes the excise upon "any interest" in real estate. Those words are broad enough to include the kind of interest shown on this record to have been owned by the testatrix at the time of her death.

*Decree of Probate Court reversed.*